CUNNINGHAM and another, Appellants, vs. BRICTSON, Garnishee, Respondent.

*November 25 — December 16, 1898.*

(1) *Appeal.* (2–4) *Chattel mortgages: Exemptions: Voluntary assignment.*

1. The findings of the trial court will not be disturbed on appeal unless clearly contrary to the weight of evidence.
2. Creditors of a husband have no right to attack a chattel mortgage because it covers exempt property and is not signed by the wife. The disability of the husband to mortgage such property without the consent of his wife, under sec. 2313, Stats. 1898, does not inure to the benefit of his creditors. -
3. Under the provision of subd. 8, sec. 2982, Stats. 1898 (exempting the tools, implements, and stock in trade of any mechanic, miner, merchant, trader, or other person used or kept for the purpose of carry-

Cunningham and another vs. Brictson.

ing on his trade or business, not exceeding $200 in value), a merchant may select as exempt such articles as a safe, show cases, and the like, to that amount, as "implements," in lieu of stock in trade.

4. The fact that, as a part of the consideration for a note secured by chattel mortgage, the mortgagee agreed to pay certain other notes theretofore given by the mortgagor, did not make the transaction a voluntary assignment, where the mortgagee did not obligate himself to apply the proceeds of the mortgage to the payment of any of the mortgagor's creditors.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

Plaintiffs were creditors of the defendant Rodby, and commenced an action against him, in which the respondent *Brictson* was summoned as garnishee. The latter answered, denying liability, upon which issue was taken.

The case was tried by the court without a jury, and findings were made substantially as follows: (1) That on October 21, 1895, and prior thereto, Rodby was the owner of a stock of dry goods, etc., at Deerfield, Wisconsin, and also certain book accounts and notes. (2) That on said date Rodby executed and delivered to *Brictson* a note for $14,917.60, which was secured by a chattel mortgage upon the property before mentioned. (3) That at that time Rodby owed *Brictson* that sum, and that said mortgage was given to secure that sum and for no other purpose; that the mortgage was duly filed, and on October 24, 1895, *Brictson* took possession of the mortgaged property. (4) That there was no understanding that any portion of the proceeds of the mortgaged property should be applied to the payment of any of the other creditors of Rodby, or any agreement that it should have any other force and effect than that of a regular chattel mortgage, and it was not received with any intent to hinder, delay, or defraud any of the other creditors of Rodby. (5) That no trust or obligation arose on the part of *Brictson* to hold or apply any of the proceeds of said mortgaged property for the benefit of any other of Rodby's creditors.

(6) That Rodby had other property than that included in the mortgage, mentioned in the testimony; that, at the time the mortgage was given, nothing was said by either party about exemptions, but that, a few days after the execution of the mortgage, Rodby stated to *Brictson* that he would retain the implements and personal property not covered by the mortgage to the amount of $200 as exempt, and has since claimed it as such, and that neither Rodby nor his wife has asserted any claim to any portion of the property covered by said mortgage. (7) That *Brictson* took.possession of said property under and by virtue of his mortgage, and held the same at the time this action was commenced; that said goods were sold in due time, and the proceeds applied upon Rodby's indebtedness, but were insufficient to pay the same.

The evidence shows that the mortgage to *Brictson* was not signed by Rodby's wife. It also shows that part of the consideration for the Rodby note, to secure which the mortgage was given, was an agreement in writing by *Brictson* to pay five notes given by Rodby to some of his relatives, amounting in the aggregate to $1,550, besides interest. The personal property claimed by Rodby as exempt consisted of some show cases, a safe, a cash register, a stove, and other articles of like character, worth about $200. The court's conclusions of law were to the effect that Rodby had a right to select the same as exempt in lieu of a like amount of merchandise, and that the mortgage did not include exempt property, and that the signature of Rodby's wife was not necessary to the validity of the mortgage; that the mortgage and the agreement by *Brictson* to pay the notes mentioned did not constitute an assignment for the benefit of creditors; that the mortgage was valid and lawful, and *Brictson* was in no manner liable as garnishee.

Judgment was entered in favor of the garnishee, from which plaintiffs take this appeal.

Cunningham and another vs. Brictson.

For the appellants there were briefs by *Lewis & Briggs*, and oral argument by *H. M. Lewis*. They argued, among other things, that the chattel mortgage to the garnishee was void under sec. 2313, Stats. 1898, because it included exempt property and was not signed by the mortgagor's wife. As it included his whole stock of merchandise, it must necessarily have included stock in trade which was exempt. *Below v. Robbins*, 76 Wis. 600. The uncontroverted testimony showed that nothing was said about exemptions for several days after the execution and delivery of the mortgage. This rendered the garnishee's title revocable and calculated to hinder, delay, and defraud creditors, and therefore fraudulent. *Hanson v. Edgar*, 34 Wis. 653; *Godfrey v. Thornton*, 46 id. 677; *Herron v. Knapp, Stout & Co. Company*, 72 id. 555; *Kent v. Lasley*, 48 id. 264; *Grant v. Lewis*, 14 id. 487; *Severin v. Rueckerick*, 62 id. 1; *West v. Snodgrass*, 17 Ala. 549; *Blakeslee v. Rossman*, 43 Wis. 116; 4 Cent. L. J. 219; *Riggs v. Murray*, 2 Johns. Ch. 565; *Chapin v. Thompson*, 89 N. Y. 280; Burrill, Assignments (3d ed.), §§ 343, 344. The property claimed by the mortgagor as exempt was not such as he as a merchant had a right to select. *Knapp v. Bartlett*, 23 Wis. 68; *Humphrey v. Taylor*, 45 id. 251; *Wicker v. Comstock*, 52 id. 315; *Roundy v. Converse*, 71 id. 524. The chattel mortgage was a voluntary assignment, not executed according to law, and therefore void. *Winner v. Hoyt*, 66 Wis. 227.

For the respondent there was a brief by *R. M. La Follette* and *Gilbert E. Roe*, and oral argument by *Mr. Roe*.

BARDEEN, J. The points pressed for our consideration may be stated as follows: (1) That the findings are not supported by the evidence; (2) that the chattel mortgage covered exempt property, and was void without the wife's signature; (3) that the transaction was a voluntary assignment, and was void as containing preferences, and was not executed in accordance with statutory requirements.

1. From an inspection of the whole record, we are of opinion that the findings of the trial court cannot be disturbed. There is certainly testimony to support every conclusion reached. This court has very many times announced the rule that it would not disturb the findings of the court below unless it clearly appeared that they were contrary to the weight of the evidence. *Clausen v. Hale*, 96 Wis. 100; *Momsen v. Plankinton*, 96 Wis. 166; *Racine Water Co. v. Racine*, 97 Wis. 93.

2. It is admitted that the chattel mortgage in question covered Rodby's entire stock of merchandise, and that it was not signed by his wife. Hence it is urged that the mortgage is void and may be attacked by his creditors. The statute in existence at the time this mortgage was given is now sec. 2313, Stats. 1898. That portion which relates to this conveyance reads as follows: "Nor shall a chattel mortgage of personal property which is by law exempt from seizure and sale upon execution be valid unless the same be signed by the wife of the person making such chattel mortgage, if he be a married man and his wife at the time be a member of his family, and unless such signature of such wife be witnessed by two witnesses." By tracing the development of the legislation which has become crystallized into the present statute, we are able to clearly determine its object and purpose. Sec. 2313 as found in the Revised Statutes of 1878 contained no provision requiring the wife's signature to a chattel mortgage. Ch. 218, Laws of 1885, added a proviso that a chattel mortgage upon *household furniture* should not be valid unless signed by the wife and her signature was duly witnessed. Ch. 268, Laws of 1887, amended the law of 1885, and brought the statute into its present form. This statute deals with property in which the creditors of the party have no interest. It was designed for the protection of the debtor's family. This limitation of the husband's right is in derogation of his common-law right to dispose of property, and is not to be construed beyond the

letter of the law. *Singer Mfg. Co. v. Cullaton,* 90 Mich. 639. This disability on the part of the husband does not inure to the benefit of his creditors. They have no right to attack the conveyance because it covered property alleged to be exempt. The supreme court of Michigan, construing a similar statute, holds that such a mortgage is not wholly void, but only to the extent of the exempt property. *Watson v. Mead,* 98 Mich. 331.

This discussion has been pursued upon the theory that the mortgage did in fact cover exempt property, but the court has found that it did not. At the time the mortgage was given, Rodby was a merchant or trader, and owned a safe, show cases, and other personal property mentioned in the testimony, not included in the mortgage, and which he claimed as his exemptions, under subd. 8, sec. 2982, Stats. 1898, as being "tools and implements" used and kept for the purpose of carrying on his trade or business. The court found that these exemptions were properly chosen, and were permissible, under the statute; that is, that he might select "tools and implements" used in his business in lieu of "stock in trade." Argument is made substantially to the effect that, under this statute, "tools and implements" must be construed as being the exemptions allowed to the "mechanic or miner" mentioned therein, and that "merchants and traders" are only entitled to exemptions of "stock in trade." This view of the statute is altogether too narrow and constricted. This court has said over and over again that exemption laws must be liberally construed; that, in following out the constitutional mandate, the legislature must provide for the enactment of laws giving the debtor a reasonable amount of property to be held free from the claims of creditors; that such laws are founded on the soundest considerations of public policy, and are designed to stimulate individual freedom and manly citizenship. *Maxwell v. Reed,* 7 Wis. 582; *Wicker v. Comstock,* 52 Wis. 315; *Comstock v. Bechtel,*

63 Wis. 656. The right to choose the exemption is a personal privilege of the debtor. *Bong v. Parmentier,* 87 Wis. 129. The law says that the "tools and implements and stock in trade" belonging to classes named shall be exempt. Under the rule of liberal construction, the words "tools and implements" should be construed to cover such articles as are usually used in, and are reasonably necessary to carry on, the trade or business of the claimant, not exceeding the value of $200, actually kept for that purpose. The limitation of value renders it unimportant to the creditor whether the exemption be chosen from the one or the other of these classes. A restriction limiting the exemption in the one case to the mechanic or miner, and in the other to the merchant or trader, is out of all harmony with the true spirit of the law, and cannot be sanctioned.

3. There is no substantial ground for claiming that the transaction in question amounts to a voluntary assignment. To so hold we would have to overturn the judge's findings, and inject into the case elements that do not exist, as we view the testimony. The agreement of *Brictson* to pay the several notes mentioned was an original undertaking, founded upon a good and sufficient consideration. The execution and delivery of the mortgage, upon the condition that the mortgagee should pay these notes, removes the case from the ban of the statute. *Dyer v. Gibson,* 16 Wis. 557. There was nothing in the case tending to show that the mortgagee obligated himself to apply the proceeds of the mortgage to the payment of any of the debtor's creditors. The evidence does show, however, that he made an unqualified promise to pay these notes, regardless of the fact of whether there would be sufficient property covered by the mortgage to pay all his claims. Lacking, as it does, the trust obligation necessary to create an assignment, there was no error in upholding the mortgage.

*By the Court.*— The judgment of the circuit court is affirmed.