LASHUA and wife, Respondents, vs. MYHRE, Appellant.

*February 5—February 24, 1903.*

*Chattel mortgages: Exempt property: Witnesses to wife's signature: Loan to pay mortgages: New mortgage invalid: Subrogation: Parties.*

1. Under sec. 2313, Stats. 1898, a chattel mortgage, in order to constitute a valid lien upon exempt property, must be signed by the wife of the mortgagor, and her signature witnessed by two witnesses, if the mortgagor be a married man and his wife be a member of his family.
2. Where one loaned money to another upon the agreement that it was to be used in paying off valid mortgages on personalty and that a new mortgage thereon should be given to the lender, and the money was in fact so used, but the new mortgage was invalid because the property was exempt and the signature of the mortgagor's wife was not witnessed as required by sec. 2313, Stats. 1898, equity will preserve, for the benefit of the lender, the lien of the former valid mortgages and will treat them as having been assigned to him. *It seems* that this would be so even if the wife had refused to sign the new mortgage.
3. In an action by the mortgagor and his wife to have the apparent lien of the new mortgage set aside, a counterclaim asked that defendant be subrogated to the rights of the former mort-

gagees. *Held*, that plaintiffs could have relief only upon pay-
ing to defendant the amounts due on the former mortgages,
and that the former mortgagees, as to whom those mortgages
had been fully paid, were not necessary parties.

APPEAL from a judgment of the circuit court for Waupaca
county: CHAS. M. WEBB, Circuit Judge. *Reversed.*

This is an action in equity to remove a cloud on the title
to personal property. The complaint alleges the ownership
by *Edward Lashua* of two horses and a number of farm im-
plements exempt from seizure and sale upon execution, and
the execution of a chattel mortgage thereon November 23,
1900, by the plaintiff *Edward* to the defendant in the sum of
$156.24; also the subsequent due filing of said mortgage in
the proper office; that the plaintiff *Elizabeth* is the wife of
the plaintiff *Edward,* and a member of his family; and that
she signed said mortgage, but that her signature was not wit-
nessed by two subscribing witnesses, by reason of which fact
said mortgage is claimed to be void, under sec. 2313, Stats.
1898.

The defendant answered, in substance admitting that *Eliz-
abeth's* signature was not witnessed by two witnesses, but al-
leging that at the time of the execution of the mortgage the
plaintiff *Edward* was indebted to the defendant upon unse-
cured notes to the amount of $56.24, and applied to the de-
fendant to loan him an additional $100, in order that he
might pay and discharge two valid chattel mortgages then ex-
isting upon the personal property in question, amounting in
the aggregate to $100, and agreeing to secure the defendant
by a new mortgage duly executed by himself and wife for the
whole sum upon said property; that the defendant agreed to
this arrangement, and that *Edward* signed the mortgage, and
took it to his home, at some distance, to obtain his wife's sig-
nature, and returned with such signature apparently prop-
erly witnessed, whereupon the defendant advanced to *Ed-
ward* said sum of $100, and surrendered *Edward's* notes for

$56.24; that on the 8th day of October, 1901; the defendant offered to release said new mortgage and return the note given therefor on condition that the plaintiffs return the money received and the old notes, but that plaintiffs refused to comply with the request.

By way of counterclaim the defendant pleaded the same facts, and also alleged that the said sum of $100 so borrowed was in fact used by *Edward* to pay and discharge said previously existing chattel mortgages, and the defendant prayed that he be subrogated to the rights of the prior mortgagees. The plaintiffs replied to the counterclaim, denying that the previous mortgages were valid liens upon the property, and also denying that the moneys received from the plaintiff were in fact used to satisfy said previous mortgages.

Upon the trial both parties moved for judgment on the pleadings, and the plaintiffs demurred *ore tenus* to the counterclaim, and the court granted the plaintiffs' motions on the ground that no facts sufficient to constitute a defense or counterclaim were stated in the answer. Judgment being rendered for the plaintiffs, the defendant appeals.

For the appellant there was a brief by *Cate & Dahl,* and oral argument by *G. M. Dahl.*

For the respondents the cause was submitted on the brief of *H. J. Severson,* attorney, and *Brennan & Frost,* of counsel. To the point that the two former mortgagees, to whose rights subrogation is sought, were necessary parties to the issues raised by the counterclaim, and hence the counterclaim was not a proper one, they cited *Aultman, M. & Co. v. Bishop,* 53 Neb. 545; 20 Ency. Pl. & Pr. 997; *Harris v. Watson,* 56 Ark. 574; *Hook v. Richeson,* 115 Ill. 431; *Logan v. Hale,* 42 Cal. 645; *McConihe v. Hollister,* 19 Wis. 269.

WINSLOW, J. Sec. 2313, Stats. 1898, provides that a chattel mortgage of personal property, exempt from execution, shall not be valid unless signed by the wife of the mortgagor,

if he be a married man and his wife be a member of his family, and unless the signature of the wife be witnessed by two witnesses. This provision was designed for the protection of the debtor's wife and family. *Cunningham v. Brictson,* 101 Wis. 378, 77 N. W. 740. Its terms are clear and leave no room for construction. A chattel mortgage, in order to constitute a valid lien upon exempt property, must be signed by the wife of the mortgagor, and her signature witnessed by two witnesses, if the mortgagor be a married man and his wife be a member of his family. In the present case it is admitted by the answer that the wife's signature was not witnessed by two witnesses, and hence it is clear that no lien upon the property was created by the mortgage itself; and hence, if there were no other facts in the case, there would be no doubt that the plaintiffs would be entitled to have the apparent lien removed, notwithstanding the ungracious attitude of the husband, in order that the beneficent purpose of the law protecting the family might not be defeated. But the answer and the counterclaim (which for the purposes of the trial were admitted to be true) state other facts, which require serious consideration. It appears by these allegations that when the $100 was borrowed of the defendant there were valid mortgages upon the property for that sum, which had been signed by the wife; and that *Edward* borrowed the money on the promise that he would pay these valid mortgages with the money so borrowed and give the defendant a new and valid mortgage on the same property therefor, and that he did in fact pay said mortgages with the borrowed money and cause them to be discharged. Do these facts in any respect alter the rights of the plaintiffs or affect their standing in a court of equity? We think they do. It is well settled that, where one loans money to another upon the agreement that it is to be used to pay off an existing mortgage on property and that a new mortgage is to be executed to the lender therefor, the lender is entitled to be subrogated to the

rights of the prior mortgagee in case the borrower fails to execute a new mortgage, or in case the new mortgage, when executed, proves to be invalid or defective. *Wilton v. Mayberry,* 75 Wis. 191, 43 N. W. 901. In such case the lender is not a mere volunteer, but has a right to have the prior mortgage kept alive for his benefit. This principle is, as justly observed by Mr. Pomeroy (3 Pomeroy's Eq. Juris. [2d ed.] sec. 1211), a particular application of the broad principle of subrogation, but it is more accurately described as an equitable assignment.

"By means of the payment the mortgage is not satisfied and the lien of it destroyed, but equity regards the person making the payment as becoming the owner of the mortgage, at least for some definite purposes, and the mortgage as being kept alive, and the lien thereof as preserved, for his benefit and security." Id.

This being the principle, it necessarily follows that in the present case the former valid mortgages must be regarded in equity as having been equitably assigned to the defendant for his protection. Those mortgages having been signed by the wife and her signature duly witnessed, she cannot object to their enforcement by the equitable owner. The lien thus enforced is not the lien of the new and void mortgage, but the lien of the old mortgage, which she herself placed upon the property with all the required legal formalities, which equity regards as still alive, and equitably the property of the defendant.

Had the wife refused to sign the new mortgage at all, it is not seen how the result could have been different. The owner of the property having borrowed money of the defendant under his agreement that it should be used to pay off a valid mortgage thereon and that defendant should have a new one in place thereof, and the money having been in fact so used, a court of equity would doubtless keep alive the valid mortgages for the defendant's protection to meet the very contingency of the wife's refusal to sign. The wife is not, there-

fore, deprived of any protection which the law has granted her. Exemption and homestead laws are liberally construed to effect their beneficent purpose, but they will not be construed so as to accomplish positive frauds, if such a result can be avoided.

From this view of the case it appears that, if the facts stated in the counterclaim were proven, the plaintiffs would not, in equity, be entitled to have the apparent lien of the second mortgage set aside, except upon condition that the amounts due upon the valid mortgages (now equitably owned by the defendant) be first paid. This would relieve the property absolutely of all that part of the apparent lien of the second mortgage which is not included in the valid mortgages, and would fully preserve the equitable rights of the defendant. This result can be accomplished without the presence of the former mortgagees. Under the allegations of the counterclaim they have no interest, either actual or apparent, in the matter. They have been fully paid and the mortgages finally discharged so far as any rights which they could possibly claim under them are concerned.

The case, however, has never been tried upon evidence. There is a reply to the counterclaim, by which all the equities claimed by the defendant are denied. This being the case, we do not feel justified in directing judgment for the defendant, but shall remand the case for trial of the issues raised.

*By the Court.*—Judgment reversed, and action remanded for a new trial.