IOWA COUNTY BANK, Respondent, vs. PITTZ, imp., Appellant.

*November 11, 1926—February 8, 1927.*

*Subrogation: Equitable character of doctrine: Person paying first-lien incumbrances on real property: Negligence: Rights of third persons.*

1. The doctrine of subrogation is purely equitable, and permits one subsequently dealing with property to be placed in the same position or with the same rights against the property as one having prior dealings with it. It does not require the existence of the element of fraud, may rest on mere mistake, and is not based upon contract. p. 89.

2. Where one not a volunteer paid a purchase-money mortgage which was released, and secured a subsequent mortgage after the recording of other mortgages given subsequent to the purchase-money mortgage, the mortgagors could assert no advantage against him by reason thereof. pp. 89, 90.

3. The doctrine of subrogation is to further natural justice, and is properly invoked against the results of the suitor's own mistakes and ignorance. p. 91.

4. One, not a volunteer, paying a purchase-money mortgage bearing five per cent. interest, which was released of record by the executrix of the estate owning it, and taking another mortgage to secure himself, bearing six per cent. interest, after the recording of a mortgage given subsequent to the purchase-money mortgage, although guilty of a lack of ordinary care and of failure to use ordinary diligence, is entitled, as against such recorded mortgage, to the paramount lien of the original purchase-money mortgage, but with interest at five per cent. only. p. 92.

5. Where a first mortgage was released of record and a subsequent mortgagee received and recorded a new mortgage in consideration of $640 and a reduction in the interest rate on his mortgage of one per cent., and thereafter a mortgage was given to the one who had paid the first mortgage and who was not a volunteer, the holder of the recorded mortgage was entitled to a prior lien for $640 and a sum representing the interest reduction. p. 93.

APPEAL from a judgment of the county court of Iowa county: ALDRO JENKS, Judge. *Reversed in part, with directions.*

Plaintiff bank brought this action to foreclose two mortgages, one of September, 1921, and one of April, 1924, on a farm of 165 acres in said county. The mortgagees made no appearance. Defendant *Pittz* by cross-complaint against plaintiff and the other defendants sought to be subrogated to all rights under a mortgage of 1912 and prior in recording to those asserted by the plaintiff.

In 1911 the defendant William Murphy, Sr., then owning and working still another farm, purchased from one Demuth the farm here involved, paying $3,525 cash, and on March 12, 1912, giving a purchase-money mortgage to said Demuth for the balance of $10,500 due in ten years and with five per cent. interest, the deed to him and said mortgage being recorded March 19th.

February 27, 1914, Demuth assigned that mortgage to one Schaumberg (recorded February 28th), and defendant *William J. Pittz* advanced to Schaumberg, his father-in-law, $3,500 to assist in its purchase.

February 25, 1919, defendant William Murphy, Sr., executed a land contract to his son, defendant William D. Murphy, Jr., for this farm at $115 per acre, with interest at five per cent. Nothing has been paid on this $18,945 purchase price, both father and son testifying that though three years were provided for in the written contract it was understood that it was to be paid for as the price could be realized out of the farm itself. W. D. Murphy, Jr., entered into possession of said farm as his own, and paid the taxes thereon and the interest on the purchase-money mortgage aforesaid.

In 1921, upon the death of Schaumberg, Julia Demuth, his daughter, was made executrix.

On September 6, 1921, the following transactions were had with the plaintiff bank:

(a) William Murphy, Sr., and another son, John F., gave plaintiff a note for a then existing indebtedness of $4,724.04 with interest at seven per cent. and due December 10, 1922.

(b) William Murphy, Sr., gave his separate note for a then present indebtedness of $3,287.60, same interest and due date.

(c) To secure notes (a) and (b), aggregating $8,011.64, a mortgage on this farm was given to the bank executed by William Murphy, Sr., the then holder of the record title, and his wife, and William D. Murphy, Jr. (though not a party to either of said notes but in possession under said land contract) and his wife.

(d) Defendant William D. Murphy, Jr., for a then present indebtedness gave his promissory note to plaintiff bank for $6,500, same interest and due date, and secured it by a mortgage on a ninety-acre farm then apparently owned and worked by Murphy, Jr.

October 1, 1921, the mortgage on this farm was recorded.

In March, 1922, the $10,500 purchase-money mortgage by William Murphy, Sr., to Demuth, and now held by the Schaumberg estate, becoming due, interviews were had between William D. Murphy, Jr., still in possession, and the defendant *Pittz,* concerning a possible arrangement by which the amount of this mortgage could be paid to the Schaumberg estate so that such estate might be settled, and defendant *Pittz* advanced the necessary amount, William D. Murphy being at that time without adequate funds. Defendant *Pittz,* besides the $3,500 advanced by him in the original purchase of the mortgage, was also interested by reason of his wife, a daughter of Schaumberg, having about $1,840 coming to her as her share of her father's estate and by having about $1,000 due him from another one interested in said estate, and he caused the said $10,500 to be paid to the Schaumberg estate, and on March 4, 1922, the executrix of the estate released the said mortgage of 1912. The same day William D. Murphy, Jr., gave his note to defendant *Pittz* for $10,500, but at the increased rate of six per cent., and secured it by a mortgage on this farm. It is testified

that Murphy, Jr., represented to *Pittz* that the farm was his, Murphy Jr.'s, and the $10,500 mortgage aforesaid the only incumbrance thereon.   On March 8th this new mortgage and the release of the old were recorded.

At the time of this transaction defendant *Pittz* makes no examination of the records, which if made would have disclosed the existence of the $8,011.64 mortgage of September, 1921, to plaintiff bank.   Defendant *Pittz* at this time had no actual knowledge of the existence of the mortgage. William Murphy, Sr., had prior to this time moved to Minnesota and continued to live there.

In March, 1924, defendant *Pittz* first learns of the bank's mortgage and is apparently advised by an attorney in charge of the Schaumberg estate above mentioned and who had advised to some extent as to the method of paying to the Schaumberg estate and the taking of a mortgage from Murphy, Jr., that the mortgage of March, 1922, was of no value inasmuch as the maker thereof was not the owner of the farm.   Thereupon a new mortgage is drafted for the same amount, $10,500, in favor of defendant *Pittz* and forwarded by said attorney to William Murphy, Sr., in Minnesota, with the request that it be executed by him and his wife in order that the security intended to be given by the mortgage signed by Murphy, Jr., should be made good, and apparently recognizing on behalf of *Pittz* a priority of the bank's mortgage of September, 1921.   The letter, however, is not in the record.

Murphy, Sr., returned such mortgage unsigned, apparently on account of being offended at the tone of the letter in which it was forwarded to him.   On April 28, 1924, an officer of plaintiff bank goes to Murphy, Sr., and is then informed, if not known before, of the attempt on behalf of *Pittz* to obtain the proposed new mortgage.   At the request of plaintiff bank William Murphy and wife, and subsequently William D.

Murphy, Jr., and wife, sign a new mortgage to plaintiff bank for $7,140. This was to secure the payment of the $6,500 note made by William D. Murphy, Jr., in September, 1921, as above recited (secured then by a mortgage on the ninety-acre farm), and a new note executed at this time for $640 payable in six months at six per cent. and signed by the two Murphys. As a part consideration for the execution of said new mortgage to the bank it was agreed, and there was indorsed on the three notes of 1921 aforesaid, that the rate of interest thereon should thereafter be six instead of seven per cent. The $640 was advanced to Murphy, Jr., only, and apparently used by him in the payment of interest due on his separate mortgage on the ninety-acre farm.

April 29, 1924, the $7,140 mortgage is duly recorded.

May 10, 1924, the proposed mortgage for $10,500 forwarded to Murphy, Sr., in March as aforesaid, returned by him and then again returned to him, is now executed by both the Murphys and their wives and the same is recorded by defendant *Pittz* June 2, 1924.

May 29th defendant *Pittz* executes a satisfaction of the mortgage of March, 1922, Murphy, Jr., to him, and such satisfaction is recorded June 3, 1924.

In April and May, 1925, the bank commences this action to foreclose the mortgages to it of September, 1921, and of April 28, 1924.

In May, 1925, defendant *Pittz* interposed his answer and cross-complaint for subrogation, etc., as aforesaid. Trial was had on March 17, 1926, and judgment was entered April 20th.

The court made no formal findings of fact, but stated as his conclusion of law that by reason of the gross negligence of defendant *Pittz* and his having chosen the remedy of taking the security in 1924, then subject to the record lien of plaintiff's mortgages, he is not entitled to be subrogated to

the lien of the original purchase-money mortgage and that the plaintiff was entitled to judgment of foreclosure.

· From the judgment the defendant *Pittz* has appealed.

For the appellant there were briefs by *Priestley & Burke* of Mineral Point, and oral argument by *Thomas N. Burke* and *T. M. Priestley.*

For the respondent there was a brief by *Fiedler, Jackson & Boardman* of Mineral Point, and oral argument by *N. S. Boardman.*

The following opinion was filed December 7, 1926:

Eschweiler, J.   When the ten-year $10,500 purchase-money mortgage, a concededly good and paramount lien upon the 165 acres, became due in March, 1922, instead of adopting the plain and simple plan of buying such mortgage from the Schaumberg estate and thereby continuing it as such absolutely safe and sure security, and, if six instead of five per cent. interest was desired thereafter, securing such by some extension agreement to that effect, *Pittz,* apparently relying upon the suggestion or advice of the attorney administering the Schaumberg estate (who was none of the counsel in the present case), blindly takes a new mortgage by one merely in possession under a land contract and with the public record disclosing the mortgage to the bank of September, 1921.   On discovery of the mistake in March, 1924, he apparently concedes, through the same attorney, that the first mortgage of the bank is now paramount to any possible security he might claim.   Then, after the bank's second mortgage has been recorded, *Pittz,* in blind disregard of what the slightest inspection would have disclosed, and having actual knowledge of the bank's mortgage of September, 1921, accepts the new mortgage of May 10th executed by the Murphys, father and son, to secure the $10,500, and now applies to a court of equity to have the results of his blind confidence

and great carelessness wiped out and to be placed, so far as the security on the real estate is concerned, ahead of one who exercised due diligence in protecting its own rights and who committed no fraud in so doing.

The doctrine of subrogation in equity, whereby the court permits one subsequently dealing with an interest or supposed interest in property to be placed in the same position or with the same rights against the property as one having prior dealings with it; that the element of fraud need not necessarily exist; that mere mistake may be enough; and that it is not based upon contract,—has been so often stated in prior decisions of this court that we shall do no more than cite for definitions: *Poluckie v. Wegenke*, 137 Wis. 433, 437, 119 N. W. 188; *Hughes v. Thomas*, 131 Wis. 315, 319, 111 N. W. 474; *Charmley v. Charmley*, 125 Wis. 297, 304, 103 N. W. 1106; and as illustrating the application of it, the cases just above cited and such as *Lashua v. Myhre*, 117 Wis. 18, 22, 93 N. W. 811; *Stewart v. Stewart*, 90 Wis. 516, 521, 63 N. W. 886; *Wilton v. Mayberry*, 75 Wis. 191, 43 N. W. 901; *Levy v. Martin*, 48 Wis. 198, 206, 4 N. W. 35.

That it is a pure, unmixed equity, with its foundations resting on natural justice and was derived from the civil law, is well stated in *Prairie State Bank v. U. S.* 164 U. S. 227, 231, 17 Sup. Ct. 142. See, also, 37 Cyc. 370; 25 Ruling Case Law, 1314.

The outstanding features of this case as we view it and that must control its disposition are as follows:

1. The $10,500 mortgage of 1912 by William Murphy, Sr., was known to all persons subsequently, and now, concerned as intended to be a first lien to secure payment of the balance of the purchase price of this farm.

2. No part of such obligation has as yet been really paid.

3. *Pittz* is not a volunteer, but had and has a direct financial and substantial interest in the fund represented by that mortgage.

4. There are no equal or superior equities to those of *Pittz*.

5. The plaintiff has advanced no money (other than the $640) in reliance upon either of the mortgages, each being taken as subsequent security for prior debts.

6. Plaintiff suffers no wrong if denied the relief granted below,—it thereby merely obtained an unbargained-for advantage.

7. The Murphys, Sr. and Jr., could not be heard to assert any advantage to themselves or to either of them as against *Pittz* by reason of these transactions, because equity would not listen to or aid them in taking advantage of him.

8. The plaintiff's priority, if sustained, was only possible through the direct aid of Murphys, Sr. and Jr., who themselves would be prevented from reaping any benefit.

9. Plaintiff's priority, if any, can exist only through the bank's advancement in its security by reason of *Pittz's* blind confidence in Murphy, Jr.'s, statements and his possession of the farm, and *Pittz's* want of ordinary diligence.

The question therefore resolves itself to this: Ought the plaintiff, under these circumstances, though diligent and not fraudulent, be permitted to retain a record priority which in practical effect cancels and discharges entirely unpaid a first and purchase-price mortgage, or that which was the substitute for or the equivalent of a vendor's lien on this farm?

Much authority can be found to support the result reached in the court below, namely, that the childlike confidence of *Pittz;* his indifference to the ordinary precautions for self-protection in transactions of this kind; his failure to ascertain that which the public records disclosed; the apparent concession by his attorney that the 1921 mortgage of the bank was paramount,—all amounted to the gross negligence such

as requires the door of a court of equity to remain closed to him.

Among authorities to that point, and the two particularly relied upon by respondent, are *Conner v. Welch,* 51 Wis. 431, 8 N. W. 260, where the court expressly held that gross negligence bars such relief. We think, however, that the facts there recited (pp. 441–443) so differentiate that from this case as to prevent its being here controlling, and as is pointed out in *Hughes v. Thomas,* 131 Wis. 315, 322, 111 N. W. 474, *supra,* the rights of a third party had there intervened; *Webber v. Frye,* 199 Iowa, 448, 202 N. W. 1, also holding that inexcusable negligence may bar the right to subrogation, but there it was denied to one who deliberately paid a prior mortgage and caused it to be extinguished, and, as the court found, so intended to do, without informing himself of other existing equities in the form of mechanics' liens. The general rule is stated to be that inexcusable neglect is a bar. 37 Cyc. 373; Bispham, Equity (9th ed.) sec. 191.

Many cases are cited by respondent bearing upon the question of fraud as affecting the right to this relief. We do not deem such material, however, because this case is not to be decided upon the ground of whether Murphy, Jr., did or did not deceive the defendant *Pittz* by any representations. 37 Cyc. 370; 25 Ruling Case Law, 1314. The cases cited to the effect that mere volunteers cannot be protected by subrogation are also beside the mark.

We appreciate, however, that this equitable doctrine of subrogation is to further the ends of natural justice and that it can properly be invoked for relief against the result of the suitor's own mistakes and ignorance, for, as said in *Dixon v. Morgan* (Tenn.) 285 S. W. 558, 562, instances for the application of the rule can hardly ever exist in the absence of some negligence on the part of one seeking such relief. From the very nature of this doctrine of subrogation its

mantle must many times, like the garment of charity, cover and wipe out a number of sins of omission or commission.

We feel justified, therefore, in saying that even in such an extreme case as is here presented, there being no equities equal or superior to those of *Pittz,* he is entitled, except for the details hereinafter mentioned, to have preserved for him a paramount lien on this farm for the unpaid $10,500 of the purchase price. That we find no similar case where such a doctrine has been applied, though it causes us to hesitate, yet it is not enough to cause us to deny the relief which seems so consonant with natural justice.

However, the following cases out of many illustrate the extent to which this doctrine of subrogation has been extended: *Kent v. Bailey,* 181 Iowa, 490, 164 N. W. 852; *Dixon v. Morgan* (Tenn.) 285 S. W. 558; *Stephenson v. Grant,* 168 Ark. 927, 271 S. W. 974; *Detroit & Northern M. B. & L. Asso. v. Oram,* 200 Mich. 485, 167 N. W. 50; *Hodge v. Dunlop,* 49 N. Dak. 125, 190 N. W. 551.

That payment was made to the Schaumberg estate in 1922 for this mortgage and that it was then released by the executrix does not necessarily extinguish it. *Krugmeier v. Hackett,* 134 Wis. 57, 60, 113 N. W. 1103; *Sullivan v. Williams,* 210 Ala. 363, 98 South. 186, 33 A. L. R. 147, note p. 149.

Upon the grounds and for the reasons above stated, we think defendant *Pittz* was entitled to have the lien of the $10,500 mortgage of 1912 as originally given maintained as a continuing and living paramount lien upon this farm. But he is entitled to have it maintained as it was originally, namely, a five per cent. interest-bearing obligation, and as such only, and cannot have it recognized as of the new rate of interest at six per cent. by the agreement with Murphy, Jr., in March, 1922.

When the bank took its second mortgage in 1924 it then in good faith and in proper reliance upon the record advanced $640, and in further consideration for such mortgage re-

duced the rate of interest from seven to six per cent. to the Murphys upon their prior obligations of the three notes of September 6, 1921. For such $640 and the amount of interest that the bank waived or loses by so reducing the rate it should be entitled to protection as against the defendant *Pitts*. The plaintiff bank, therefore, is entitled to foreclosure as against the farm for the amount of the said $640 with interest and for a further sum representing the loss in interest by the aforesaid reduction, together with the costs allowed in the court below; the defendant *Pitts* is then entitled to a foreclosure on said farm of his $10,500 mortgage with any unpaid interest computed at five rather than six per cent. since March, 1922, and with his costs as against the defendants Murphy, Sr. and Jr.

*By the Court.*—Judgment reversed, to be modified as indicated in the opinion; respondent to pay the clerk's fees on this appeal, and neither party to have other costs here as against the other.

A motion for a rehearing was denied, with $25 costs, on February 8, 1927.