HOME OWNERS' LOAN CORPORATION, Appellant, vs. PAPARA and others, Respondents.

*April 10—June 26, 1942.*

113

114

For the appellant there were briefs by *Gerald T. Flynn* and *James B. Croke,* both of Racine, and oral argument by *Mr. Flynn.*

For the respondents there was a brief by *Knoblock & Konnak* and *E. W. Lawton,* all of Racine, and oral argument by *H. A. Konnak,* and on the motion for rehearing there was a brief by *E. W. Lawton,* attorney, and *Rieser & Mathys* of Madison of counsel.

The following opinion was filed May 5, 1942:

FAIRCHILD, J. The real estate in question, consisting of a city lot occupied by a two-story frame house, was purchased by defendant Tony Papara and his brother Frank, since deceased, as tenants in common, both then single, on January 8, 1925. To finance the purchase of the property the brothers executed a note, bond, and mortgage in favor of the Home Mutual Building-Loan Association, binding themselves sev-

erally and jointly to pay the sum of $3,500. In 1925, subsequent to the purchase of the property and the execution of the mortgage to the Building-Loan Association, Tony married Esther Papara who has filed a motion to review portions of the judgment on this case.

In 1928, Frank Papara died intestate survived by his mother Louise Papara and his father Carmen Papara. By decree of the county court of Racine county, dated April 29, 1929, title to the undivided one-half interest of Frank in the real estate was declared to be vested in Carmen and Louise Papara as the heirs at law of the decedent. At the time of his death, the interest of Frank was subject to the unpaid balance of the Building-Loan Association mortgage.

Carmen Papara left Italy and came to Racine, Wisconsin. The mother, Louise Papara, never came to this country.

For many years prior to the commencement of this action Tony and Esther Papara lived on the mortgaged premises and occupied it as their homestead. They were living there at the time of the death of Frank, and Tony regarded this property as his own, and believed that he was its sole owner. Tony never conferred with his father or mother, or after the death of his father with any of his sisters or brothers regarding the management of the property.

September 18, 1933, Tony Papara made written application to plaintiff HOLC for a loan secured by the property in question. At this time the Building-Loan Association mortgage was overdue, and taxes for the years 1931 and 1932 were delinquent. The application went through the usual channels of the HOLC and the loan was made on September 12, 1934. This loan, in the amount of $3,389.65, was used to pay the Building-Loan Association mortgage, principal and interest, and to pay three years' delinquent taxes; the balance of the money being used to pay insurance, cost of abstract, releasing of judgments, and fees. The money advanced by plaintiff was paid by it to the Building-Loan Association which de-

livered a written satisfaction in full and canceled its note and bond. To secure and evidence the refinancing loan the HOLC was given a note and mortgage purportedly executed by the interested parties. As a matter of fact the signature of Carmen Papara and the mark of Louise, successors to the one-half interest of Frank, were forged, both the plaintiff and the answering defendants disclaiming any knowledge as to who committed the forgeries. Tony's wife Esther did not sign the loan application but did sign the note and mortgage. Esther, who was able to read and speak the English language, signed the mortgage at the request of a stranger who called at her residence and after showing her the signature of her husband requested her to sign the instrument. He did not reveal to her the nature of the document. She, however, made no inquiry as to the character of the paper and signed it upon request. The mortgage was not executed in the presence of witnesses nor acknowledged.

Carmen Papara died, after the execution of the HOLC mortgage and prior to the commencement of these foreclosure proceedings, survived by his wife Louise and several children, some of whom are living in this country and some in Italy. Joined as defendants in this action are Tony and his wife Esther, a brother Louis and his wife, both living in Racine, and the unknown heirs of Carmen and others having an interest in the property, and a judgment creditor who did not appear.

The questions to be determined on this appeal are, (1) whether plaintiff is entitled to foreclose against the inchoate dower rights of Esther Papara; and (2) whether plaintiff is entitled to foreclose against the present owners of the interest of Frank Papara.

It is clear that plaintiff stands in the position of one entitled to the benefit of the doctrine of subrogation for "it advanced the money under a definite agreement that plaintiff have security in the form of a first mortgage." *Bank of Baraboo v. Prothero* (1934), 215 Wis. 552, 558, 559, 255 N. W.

126; *Home Owners' Loan Corp. v. Dougherty* (1937), 226 Wis. 8, 275 N. W. 363; 2 Jones, Mortgages (8th ed. 1928), p. 425, § 1028; Pomeroy, Eq. Jur. (5th ed. by Symons, 1941), p. 640 *et seq.,* § 1212; 5 Tiffany, Real Property (3d ed. by Jones, 1939), pp. 570–573, § 1507; note (1931), 70 A. L. R. 1396. It therefore remains to be considered whether anything in the circumstances of this case operates to bar the application of that doctrine.

The rights of Esther under the homestead and dower statutes might be of concern but for the fact that the HOLC is entitled to an equitable assignment of the Building-Loan Association mortgage and has a lien superior to her possible claims. At the time of her marriage, Esther's rights were subject to a pre-existing valid lien on the property, and any failure to execute the new mortgage with the formalities required by secs. 235.27 and 235.19, Stats., cannot deprive the plaintiff of its rights to foreclose against her interests in this case. As said by Mr. Justice WINSLOW in the case of *Lashua v. Myhre* (1903), 117 Wis. 18, 22, 23, 93 N. W. 811, in reference to a similar situation:

"Had the wife refused to sign the new mortgage at all, it is not seen how the result could have been different. The owner of the property having borrowed money of the defendant under his agreement that it should be used to pay off a valid mortgage thereon and that defendant should have a new one in place thereof, and the money having been in fact so used, a court of equity would doubtless keep alive the valid mortgages for the defendant's protection to meet the very contingency of the wife's refusal to sign. The wife is not, therefore, deprived of any protection which the law has granted her. Exemption and homestead laws are liberally construed to effect their beneficent purpose, but they will not be construed so as to accomplish positive frauds, if such a result can be avoided."

It is unnecessary to consider whether or not the acts of Esther in this case constitute a sufficient basis for creating an equitable estoppel within the rule of *Krueger v. Groth* (1926),

190 Wis. 387, 209 N. W. 772, since it is clear that under the *Lashua* and *Prothero Cases, supra,* plaintiff is entitled in this instance to subrogation or an equitable assignment of the rights of the original mortgagee, rights that are superior to those of Tony's wife.

Subrogation as against Esther does not cut off any intervening rights of one relying upon the extinguishment of the prior mortgage nor of one who has innocently placed himself in a position of disadvantage and would be injured by the application of the doctrine. As previously stated, Esther's rights were subject to a pre-existing valid mortgage upon the property and to permit plaintiff to assert the rights of the original mortgagee against her would not prejudice her interests. *Serial B. L. Sav. Institution v. Ehrhardt* (1924), 95 N. J. Eq. 607, 124 Atl. 56. See Sheldon, Subrogation (2d ed. 1893), p. 75 *et seq., § 94.* Moreover, by signing the note and mortgage Esther indicated her assent to the agreement that plaintiff's loan to pay off the original incumbrance be a secured debt and this loan was to her advantage as well as to that of her husband.

The circuit court denied plaintiff the right to assert its claim against the interest of Tony's cotenants on the theory that Tony was acting solely for himself and did not attempt to transact any business on behalf of the co-owners, the court saying in its opinion: "There is not a scintilla of evidence in the record from which an inference, much less a finding, may be made that the relationship of principal and agent existed between the defendant, Tony Papara, and his father or mother, or that he was acting for them in any respect in negotiating and executing the mortgage in question." But in reaching its conclusion the trial court failed to consider the controlling relationship governing the transactions in question. The relationship to be considered is not that of principal and agent but that of cotenants.

As a general rule a cotenant paying off a mortgage upon the entire interest is entitled to be subrogated to the rights

of the mortgagee against his cotenants and has a lien against their interests, *Hermance v. Weisner* (1938), 228 Wis. 501, 279 N. W. 608, 117 A. L. R. 1437; 14 Am. Jur. 111, 112, § 45; and this right is subject to the liens that equity may impose to protect one who is not an officious volunteer against loss by reason of the payment of a prior mortgage upon the solicitation of one of the cotenants. Tony was entitled to pay off the entire mortgage debt to protect his own interest and was entitled to enforce that mortgage against his cotenants, and plaintiff who advanced its loan for this purpose should therefore be entitled to assert its claim against the interest of Tony's cotenants. In respect to the entire debt in a situation such as this the lender is not a volunteer. *Haverford L. & B. Asso. v. Fire Asso.* (1897) 180 Pa. 522, 37 Atl. 179, 57 Am. Rep. 657. So the Michigan court in *Smith v. Sprague* (1928), 244 Mich. 577, 580, 222 N. W. 207, held that one who paid money to satisfy a mortgage "at the instance, promise, and request of . . . one of the tenants by the entireties, . . . was not a mere volunteer," but was entitled to subrogation regardless of whether the promisor had authority to bind his cotenant or whether the cotenant had made a similar promise or ratified the one made. In *Ligon v. Barton* (1906), 88 Miss. 135, 40 So. 555, subrogation was applied in favor of one who advanced money at the request of one of several tenants in common. It has been said that the majority and better reasoned view is that, under similar circumstances, subrogation applies in favor of one who advances money upon the security of a lien executed without authority. Note (1926), 43 A. L. R. 1395 *et seq.*

In proper cases equity will protect one advancing money secured by a forged mortgage to pay an existing valid lien. *Davies v. Pugh* (1907), 81 Ark. 253, 99 S. W. 78 (signature of debtor's wife forged) ; *Zinkeison v. Lewis* (1901), 63 Kan. 590, 66 Pac. 644 (wife's signature forged by debtor) ; *Newcomer v. Sibon* (1925), 119 Kan. 358, 239 Pac. 1110, 43 A. L. R. 1387 (signature of wife and wife's grantee forged

by husband) ; *Serial B. L. Sav. Institution v. Ehrhardt, supra* (signature of wife forged) ; *Helm v. Lynchburg T. & S. Bank* (1907), 106 Va. 603, 56 S. E. 598 (signature of owner and mortgagor forged) ; note (1926), 43 A. L. R. 1405 *et seq.*

Respondent argues that the doctrine of subrogation is inapplicable in this case by reason of the negligence on the part of plaintiff in failing to take steps to obtain a properly executed mortgage. Even in the case of negligence, however, one who is not a volunteer is entitled to equitable assignment in the absence of intervening equities. *Iowa County Bank v. Pitts* (1927), 192 Wis. 83, 91, 92, 211 N. W. 134 : "From the very nature of this doctrine of subrogation its mantle must many times, like the garment of charity, cover and wipe out a number of sins of omission or commission."

The doctrine of subrogation rests upon the theory of unjust enrichment. Restatement, Restitution, p. 652 *et seq.,* § 162. In the instant case those having an interest in the property, Tony's wife and cotenants, as well as Tony, alike received the benefit of the HOLC loan, the payment of an existing mortgage valid as against their interests, *Smith v. Sprague, supra;* and none of them has changed nor been induced to change his position by reason of the satisfaction of the Building-Loan Association mortgage. *Home Owners' Loan Corp. v. Rupe* (1938), 225 Iowa, 1044, 283 N. W. 108. In this situation any negligence on the part of plaintiff in failing to safeguard against any defects in the execution of the mortgage cannot bar it from the right of subrogation. *Home Owners' Loan Corp. v. Collins* (1936), 120 N. J. Eq. 266, 184 Atl. 621.

This case is parallel with *Hughes v. Thomas* (1907), 131 Wis. 315, 111 N. W. 474, wherein the widow of the original mortgagor and life tenant of the mortgaged premises applied for a loan to pay the mortgage imposed on the fee and agreed to give security for the new loan. The remaindermen did not join in the application nor in the new mortgage exe-

cuted by the life tenant and intended to cover the fee. The payment of the previous mortgage debt and the execution of the new mortgage pursuant to the agreement made by the life tenant was held to (p. 320) "bind the fee to the extent of subrogating [the new mortgagee] to the interest of the original mortgagee." The new mortgagee (p. 321) "cannot be held a volunteer or intermeddler. The doctrine of subrogation, rightly applied, is calculated to promote the ends of justice through courts of equity where the law is powerless to award relief and justice is promoted by the enforcement of the remedy and no one is injured."

*By the Court.*—The judgment as it affects the interests of Tony and Esther Papara is modified to permit a foreclosure as to those interests, and as so modified is affirmed, and as to the other defendants it is reversed, and the cause remanded with directions to enter judgment in accordance with this opinion.

A motion for a rehearing was denied, without costs, on June 26, 1942.