### In re H. L. EVANS & CO.

#### (District Court, D. Delaware. December 13, 1907.)

#### No. 143.

BANKRUPTCY—EXEMPTIONS—PARTNERSHIP—WEARING APPAREL.

The existing laws of Delaware (volume 14, p. 652, c. 562, § 1) providing that "every person residing within this state shall have exempt from execution or attachment process * * * all the wearing apparel of the debtor and his family," *held*, that the two members of a bankrupt firm having their domicile in Delaware were entitled to exemptions in accordance with the laws of that state, and that the words "all the wearing apparel," being without restriction or qualification, included, in the case of one of the partners, a gold watch, a watch chain, a set of cuff links, two watch fobs, a gold ring, a gold ring with diamond setting, a gold ring with sapphire setting, a pearl scarf pin, a ruby scarf pin, and a set of shirt studs, of the aggregate value of $444.50, and in the case of the other a gold watch, a chain and cutter, a watch fob, a scarf pin, two sets of cuff links, a set of shirt studs, and a set of cuff buttons, of the aggregate value of $110.50.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 659, 678.]

(Syllabus by the Court.)

In Bankruptcy. Petition for review of order of referee.

C. L. Ward and David J. Reinhardt, for Thomas F. Bayard.
Ward & Gray and John F. Neary, for bankrupt.

BRADFORD, District Judge. Harry L. Evans and John H. Evans, members of the bankrupt firm of H. L. Evans & Co., presented their petition to the referee, setting forth that the trustee in bankruptcy held possession of certain personal effects alleged to be wearing apparel belonging to them, and praying, in effect, that the same be delivered to them as exempt from the claims of creditors under the operation of the bankruptcy act. All the facts alleged in the petition are admitted by the trustee. Part of the property of which delivery was sought belonged to the estate of Harry L. Evans, and consisted of a gold watch, a watch chain, a set of cuff links, two watch fobs, a gold ring, a gold ring with diamond setting, a gold ring with sapphire setting, a pearl scarf pin, a ruby scarf pin, and a set of shirt studs, appraised in the

aggregate at $444.50, and the rest of the property of which delivery was sought belonged to the estate of John H. Evans, and consisted of a gold watch, a chain and cutter, a watch fob, a match safe, a scarf pin, two sets of cuff links, a set of shirt studs, and a set of cuff buttons, appraised in the aggregate at $110.50. The referee denied the prayer of the petition, save as to the set of cuff links and the set of shirt studs claimed by Harry L. Evans, and the two sets of cuff links, the set of shirt studs, and the set of cuff buttons claimed by John H. Evans. Whereupon an order of review was applied for and obtained by the petitioners, and the matter is now before this court for determination.

Section 6 of the bankruptcy act of July 1, 1898 (30 Stat. 548, c. 541 [U. S. Comp. St. 1901, p. 3424]), provides that the act "shall not affect the allowance to bankrupts of the exemptions which are prescribed by the State laws in force at the time of the filing of the petition in the State wherein they have had their domicile for the six months or the greater portion thereof immediately preceding the filing of the petition." By reason of the domicile of both of the members of the bankrupt firm their right to exemption must be determined with reference to the laws of Delaware. Section 1, c. 562, p. 652, 14 Del. Laws, provides that:

"Every person residing within this State shall have exempt from execution or attachment process * * * all the wearing apparel of the debtor and his family."

Theretofore the exemption as far as it related to apparel was restricted to "necessary wearing apparel." Section 2, c. 111, p. 828, Rev. Code. The point to be decided is whether the words "all the wearing apparel of the debtor and his family" as they occur in the exemption law in force now and at the time of the filing of the petition in bankruptcy, are, when legitimately construed or interpreted, sufficiently comprehensive to include all or any of the articles which were disallowed to the bankrupts in the order now under review. There is much conflict in the cases on the subject, and frequently, even where decisions are harmonious, the grounds upon which they are based are variant and unsatisfactory. Further, the cases disclose material differences in phraseology in the exemption acts which have received judicial construction. It is well settled that statutes exempting portions of a debtor's property from liability to be applied to his debts should receive a liberal construction. O'Gorman v. Fink, 57 Wis. 649, 15 N. W. 771, 46 Am. Rep. 58; Fink v. O'Neil, 106 U. S. 272, 1 Sup. Ct. 325, 27 L. Ed. 196; Richardson v. Buswell, 10 Metc. (Mass.) 506, 43 Am. Dec. 450; In re Hindman, 104 Fed. 331, 43 C. C. A. 558; Kuntz v. Kinney, 33 Wis. 510; Stewart v. Brown, 37 N. Y. 350, 93 Am. Dec. 578; Bevan v. Hayden, 13 Iowa, 122; Bashinski v. Talbott, 119 Fed. 337, 56 C. C. A. 241; Good v. Fogg, 61 Ill. 449, 14 Am. Rep. 71.

But, notwithstanding this canon of construction, it is obvious that the statutory exemption in Delaware of wearing apparel cannot in all cases have full operation according to the literal import of its terms. "All the wearing apparel of the debtor and his family," if the words

be taken literally, would apply as well to a stock of wearing apparel owned and held by him for sale as to wearing apparel personally worn or to be worn by him. The avoidance of such an absurd result requires that the generality of the language of this express statutory provision be restricted to all wearing apparel belonging to the debtor and worn or intended to be worn by him and his family; but with respect to all such apparel so worn or intended to be worn the statute must receive a liberal construction. Unlike the pre-existing law restricting the exemption of wearing apparel to such as was necessary, it does not expressly or by implication limit either the value or amount or the character of the wearing apparel intended to be exempt. It covers all wearing apparel of the debtor worn or intended to be worn by him and his family. While the answer of the trustee concedes the truth of all allegations of fact in the petition of the bankrupts, there is no express admission, nor is there evidence to show, that the articles claimed to be exempt were, in fact, worn or intended to be worn by them or their families. But the case has been argued on both sides on the assumption that the articles in question were so worn or intended to be worn, and for the purpose of reaching a decision I shall treat the matter assumed as a fact. If on this point I be in error it will be corrected on proper application to the court. The Delaware statute now in force, unlike those of many of her sister states, contains, as above mentioned, no limitation of the value or amount of the exempt property. No sum of money is specified as the maximum value of the exempt apparel, nor is the term "necessary" or any other expression employed which by implication might carry with it a restriction as to its amount or character. Therefore the value or amount of the articles in any given case falling within the class of property designated in the exemption clause is wholly irrelevant to the question whether they are or are not exempt, save in so far as such value or amount may be indicative of mala fides on the part of the debtor or an intent to defraud his creditors. If the wearing apparel claimed as exempt be so excessive in amount or value as, due regard being had to the circumstances of the particular case, including condition and style of living, to create a conviction that the demand is made for the purpose of defrauding creditors, such claim will be disallowed in whole or in part by reason of the fraud. Nor is it to be tolerated that one should invest inordinately large sums of money in wearing apparel with an intent to hinder and defraud his creditors, and effectuate his wrongful purpose by resorting to the expedient of wearing or intending to wear it, in whole or in part. But fraud must be strictly proved; and here no fraud is charged against either of the bankrupts with respect to the exemption claimed. Nor is the value of the articles they seek to recover such as to show a wrongful intent against creditors; the appraised value of the articles by the admission of counsel being in one case $444.50, and in the other only $110.50, and by the finding of the referee being, respectively, $322 and $99.10. If it be said that it is unjust to creditors that the bankrupts should as against them retain property of such value, the answer is to be found in the consideration that the state statute contains no limitation, and the courts of the United States in administering the bank-

ruptcy act are bound by state statutes of exemption. If the amount of an exemption to a debtor be unwise, the remedy should be found in state legislation, and cannot be supplied by the courts in the absence of such legislation. The inquiry is thus presented whether the articles claimed by the petitioners as exempt constitute wearing apparel within the meaning of the Delaware statute.

It is clear on the authorities that wearing apparel may include articles worn on the person, other than hats, shoes, and what is commonly understood by the term "clothing." It would, however, be difficult, if not impossible by precise definition to furnish an unfailing test to distinguish under all circumstances between what things would and what things would not constitute wearing apparel within the intent of such an exemption law as that of Delaware. But, while in the decision in any case of the question whether given articles are wearing apparel due regard should be had to the particular circumstances and blind reliance should not be placed on any rigid rule of supposed universal application, there are nevertheless considerations of a general character which will shed light on the subject. Articles intended and adapted to be worn on the person and necessary to or promotive of protection of the person against the elements, or personal comfort or decency, or serving to ornament the person, may be wearing apparel; for the principal, if not only, objects to be attained through such apparel are such protection, comfort, decency, and ornamentation. If the articles be such as are customarily worn and conducive to the above ends, or any of them, it is, on principle, wholly unimportant, under an exemption act like that of Delaware, whether their texture or material be silk, wool, cotton, or linen, or gold, silver, brass, or iron, or what their form and size may be, or whether they are intended to be worn next to the skin or on the surface of other articles of apparel, or on what portion or portions of the person they are to be worn, or whether, if for ornamentation, they are intended to be continuously displayed on the person during all the time they are worn. Such a statutory exemption, I have no doubt, includes badges, medals, and, generally, insignia and regalia intended and adapted to be worn on the person indicative of rank, office, title, honor, or distinction, though not useful in the sense of conducing to bodily comfort or decency, but only ornamental. The confusion in the cases undoubtedly has arisen from a failure to distinguish between "wearing apparel" and "necessary wearing apparel." The latter phrase may well exclude articles which answer no useful purpose, but are merely ornamental. So, while including such articles of jewelry as are usefully employed in connecting or fastening together parts of one's clothing, it may exclude jewelry not so used. So, further, it may operate to impose a reasonable limit upon the amount or value of the wearing apparel to be exempted by excluding so much as is not necessary.

Purely ornamental articles for the person properly can be excluded solely because they are not necessary within the meaning of the above phrase. But the phrase "all the wearing apparel" does not carry with it or permit any such restriction. Occurring in a statutory exemption, it includes, among other things, articles usually or customarily worn

on the person solely for ornament. The fact that they are worn and adapted to be worn for that purpose imparts to them the character of wearing apparel; for ornamentation of the person is one of the legitimate uses and ends of such apparel. The buttons on the back or sleeves of a coat are worn solely as ornaments, answering no useful end whatsoever. Yet they are wearing apparel, whether consisting of cloth, bone, gutta-percha, composition, mother of pearl, brass, silver, or gold. They may or may not be inseparably attached to the garment they adorn. If buttons of mother of pearl or other delicate or precious material be so adjusted to the back or sleeves of a coat as to be removable in order to avoid injury when the garment is pressed or cleaned, they do not by such removability or removal cease to be part and parcel of the wearing apparel, although intended and used purely for adornment. A thin lace collar on a woman's neck may not be necessary to decency or promotive of physical comfort. It may be worn solely for ornamentation; yet undoubtedly it is part of her wearing apparel. If, instead of a lace collar, a band or necklace of pearls is worn for precisely the same purpose, it is equally wearing apparel, unless a distinction is to be recognized based wholly upon a difference of material. But such a distinction is clearly unsound. Similar considerations are applicable to the substitution of a jeweled bracelet for a purely ornamental wristband or of a brooch for a bow of ribbon on the breast. So, in the case of men, there can be no doubt that gold-fringed epaulets, or shirt studs, stick pins, cravat rings, cuff buttons, watch chains, fob chains, or ribbons, cigar cutters attached to ribbons or chains, and worn as charms, and other articles customarily worn on or in connection with the clothing by way of ornamentation, whether conducive to physical comfort or other useful ends or not, may properly be treated as attire or wearing apparel under the general language of the Delaware statute. Nor am I able to distinguish in principle between kid gloves worn merely for the sake of appearances and metal rings worn on the fingers for the same purpose, or between such rings so worn and ornaments of gold, silver, and precious stones displayed on other parts of the person. The fact that articles worn on the person solely for ornamentation may be detached from or unconnected with the clothing or other articles of attire cannot exclude them from the category of wearing apparel. A small triangular piece of lace, or a bow of ribbon, worn on a woman's head for ornamentation alone, is none the less wearing apparel because unconnected with other parts of her dress. A narrow velvet ribbon worn around her throat above and separate from a necklace of jewels or precious metal, and equally unconnected with her clothing, and, like the necklace, worn only for display, is undoubtedly wearing apparel, and as such would be exempt under the Delaware statute. The necklace is equally wearing apparel, and one is irresistibly led to the conclusion that a bracelet of jewels or precious metal and a finger ring of gold or precious stones equally come within the same category. It is impossible to discriminate between the necklace, the bracelet, and the finger ring. They are all worn solely as ornaments, and are unconnected with other portions of the dress or attire. If finger rings and other articles worn by women solely for display and

unconnected with their clothing be wearing apparel, I can perceive no reason to justify the court in holding that finger rings and other articles worn by men for the same purpose and so unconnected are not wearing apparel, within the general unrestrained language of the statutory exemption in Delaware. The notion that articles usually worn for ornament only must serve to connect the clothing of the person in order to be wearing apparel has no sound or reasonable basis. It certainly is not warranted by the express terms of the statute. Nor is there any legitimate implication or presumption that the phrase "all the wearing apparel" was used in such a restricted sense.

To the contention that it cannot be supposed that the Legislature intended that a debtor should continue to hold free from the claims of his creditors jewelry and precious stones of great value unconnected with his clothing, and serving no useful purpose, there are several answers. First. It is wholly immaterial, so far as hardship to creditors is concerned, whether a ring of great value be worn on the finger, or around the ends of a necktie to hold them together, or whether gold or precious stones are contained in shirt studs or the removable buttons of a white vest, or are worn on the hand. Second. The contention essentially involves the wholly fallacious idea that the relative extent of surface of the person covered by the ornament or the garment to which it is attached or connected may furnish the test whether the article is or is not wearing apparel. Third. The Legislature has not deemed it proper either to establish a maximum value for exempt wearing apparel or to require that such apparel should be "necessary." Finally, as before stated in substance, in case of fraud on the part of the debtor toward his creditors with respect to wearing apparel, the claim of exemption on a proper showing may be disallowed in whole or in part. It is admitted in this case on the part of the trustee in bankruptcy that cuff links, cuff buttons, and shirt studs properly may be held to be wearing apparel under the Delaware statute, "being used for the purpose of holding together the breast and cuffs of a shirt just as ordinary buttons are used." But a distinction is drawn between such links, buttons, and studs on the one hand, and finger rings and scarf pins on the other; the latter being "purely and simply articles of ornament." This distinction is utterly unsound when attempted in a case governed by such an exemption statute as that in question. Further, it is difficult to perceive how a scarf pin used not only for ornament, but also to fasten together and keep in proper form a scarf or cravat, which unquestionably is an article of wearing apparel, can be distinguished in principle from cuff links or buttons and shirt studs. Again, the distinction is based on an assumption, the falsity of which has already been shown, that under the Delaware statute articles customarily worn on the person solely for ornament cannot constitute wearing apparel. Further, the attempted distinction leads to a palpable absurdity. If only such studs as are used to fasten together the bosom of a shirt opening in front can be considered as wearing apparel, what shall be said of the same studs if used for ornament only on the bosom of a shirt not opening in front? for such studs frequently are so made as to be capable of use indifferently in both kinds of shirts.

Are precisely similar shirt studs to be held wearing apparel if owned by a debtor who wears shirts opening in front, and not wearing apparel in the case of one whose shirts open only behind? And, if the debtor wears shirts of both kinds, how is the question to be determined? It is unnecessary further to pursue this reductio ab absurdum.

Articles of ornament may or may not be useful, and it is not in the least necessary under the broad language of the Delaware act that they should serve a useful end in order to be wearing apparel. If usually or customarily worn on the person for display or adornment they are exempt. If this involves hardship to creditors, the remedy is with the Legislature, and not the courts. Judicial legislation · is to be shunned as juridical disease. Undoubtedly there are many articles of a useful nature frequently, if not customarily, worn about the person which cannot in any sense be deemed wearing apparel, such, for instance, as penknives, match safes, pistols, pedometers, and other implements carried in pockets or otherwise concealed. Such articles are not required by considerations of decency, nor are they necessary to ornament the person or protect it against the elements, or to serve any other purpose usually or customarily associated with one's attire or apparel. But a watch, whether worn on a chain as a charm or in a fob, cannot properly be treated as a mere instrument or implement in contradistinction to apparel. Watches are customarily worn by those who can afford to acquire them, and, wholly aside from their value as pieces of time-keeping mechanism, usually tend, either constantly when displayed as charms, or intermittently, if carried in a fob, to adorn or ornament the person. Those who are in the habit of wearing watches do not feel completely dressed without them. I am satisfied that they fall within the exemption of the Delaware statute.

This court will not attempt to thread the labyrinth of confusion and unreason presented by many of the decisions and dicta relating to the exemption of wearing apparel. To do so is as unnecessary as it would be tedious. A few cases and dicta, however, will be referred to which strongly support the views above expressed. In Sellers v. Bell, 94 Fed. 801, 36 C. C. A. 502, it was held by the Circuit Court of Appeals for the Fifth circuit that under an Alabama statute exempting from execution process "all necessary and proper wearing apparel" of the debtor a gold watch was included in the exemption allowable in bankruptcy; the court stating:

"We have not found in the statutes of Alabama or in the decisions of the Supreme Court of that state a definition of the phrase 'wearing apparel,' as it is used in this section. The only limitation which the section puts upon the meaning of the words is that the apparel shall be necessary and proper for the wearer or his family. This includes what is merely proper, as well as what is necessary. And, subject to this qualification alone, there is no limitation put on the quantity, quality, or value of the property which the words used describe. * * * The phrase 'wearing apparel,' as used in exemption laws, has its popular sense, and includes all the articles of dress generally worn by persons in the calling and condition of life and in the locality of the residence of the person claiming the exemption. It includes whatever is necessary to a decent appearance and to protection against exposure to the changes of weather, and also what is reasonably proper and customary in the way of ornament."

In the case of In re Jones (D. C.) 97 Fed. 773, the District Court for the Eastern District of Wisconsin held that under the statute of that state exempting "all wearing apparel of the debtor" the bankrupt should be allowed to retain his gold watch and chain and also a Masonic uniform worn only on special occasions; Judge Seaman saying:

"The bankruptcy act adopts the exemptions of the state statute, which includes their construction by the Supreme Court of the state, and the rulings of that court are uniform in favor of the utmost liberality for such interpretation. Heath v. Keyes, 35 Wis. 668, 672; Cunningham v. Brictson, 101 Wis. 378, 383, 77 N. W. 740. In the well-considered case of In re Steele, 2 Flip. 324, Fed. Cas. No. 13,346, it is held that a watch usually carried upon the person of the debtor constitutes wearing apparel within the exemption statute; and this view is approved in Stewart v. McClung, 12 Or. 431, 8 Pac. 447, 53 Am. Rep. 374, and in Brown v. Edmonds, 5 S. D. 508, 59 N. W. 731. Without attempting to review the authorities one way and the other upon this point, I am of opinion that such construction is in accord with the Wisconsin doctrine, and should be adopted here. * * * In reference to the 'Masonic uniform,' it appears to be owned for occasional wearing apparel, and the statute imposes no requirement of 'ordinary and usual' service. If so held in good faith, the exemption applies."

In the case of In re Steele, 2 Flip. 324, Fed. Cas. No. 13,346, the District Court for the Western District of Tennessee held that under the exemption provided by the bankruptcy act of 1867 a gold watch could be retained by the bankrupt. Judge Hammond said:

"It would not be doing any great violence to the meaning of the term 'wearing apparel,' as used in the bankrupt act, to include in it a gold watch of moderate value. The definition of the word 'apparel,' as given by lexicographers, is not confined to clothing. The idea of ornamentation seems to be a rather prominent element in the word, and it is not improper to say that a man 'wears' a watch or 'wears' a cane."

In McClung v. Stewart, 12 Or. 431, 8 Pac. 447, the Supreme Court of Wisconsin had under consideration a statute of that state exempting "necessary" wearing apparel to the value of $100; Lord, J., after reviewing the authorities, saying:

"Upon the whole, our own judgment inclines us to the opinion that the phrase 'necessary wearing apparel,' as used in our statute, may include in it a watch of moderate value without doing violence to its meaning. We are not, therefore, prepared to say that a watch of moderate value is not a necessary article of wearing apparel, and as such exempt, when it is made to appear affirmatively that the watch and other articles of apparel selected or reserved do not exceed the amount limited by the statute."

The court held in that case that a watch was not exempt, because it did not appear that the property so claimed was not in excess of the limitation of $100, but clearly recognized that a watch was included in the category of wearing apparel. In the case of In re Smith (D. C.) 96 Fed. 832, the District Court for the Western District of Texas, while leaning toward the untenable theory that an article "worn as a mere ornament, and intended simply for display, without serving a useful purpose, * * * would scarcely be regarded as exempt," held that under a statute of that state exempting all "wearing apparel" of the debtor a diamond stud worth $250 used by a bankrupt for the purpose of fastening his shirt could be retained by him. In Mack v. Parks, 8 Gray (Mass.) 517, 69 Am. Dec. 267, the Supreme

Court of Massachusetts held that a watch on a debtor's person was not liable to attachment; Judge Bigelow saying:

"The watch, at the time it was taken by the defendant, was in the plaintiff's actual possession and use, worn as part of his attire or apparel."

Reference is made to this case, not because it is in point, but as disclosing the opinion of the court that a watch may be worn as part of one's attire or apparel. In Brown v. Edmonds, 8 S. D. 271, 66 N. W. 310, 59 Am. St. Rep. 762, the Supreme Court of South Dakota held that under a statute of that state exempting "all wearing apparel and clothing of the debtor and his family" a watch and chain carried by him should be regarded as wearing apparel; the court saying:

"The exemption is not limited in value, nor by the word 'necessary,' found in most statutes. * * * While the question is not free from difficulty, and one upon which courts may easily differ, we are inclined to hold that defendant's watch and chain were absolutely exempt as wearing apparel."

Chief Justice Redfield, it seems to me, expressed a just conception of wearing apparel in his dissenting opinion in Sawyer v. Sawyer, 28 Vt. 249, where the Supreme Court of Vermont had under consideration a statute providing that upon the death of a husband his widow should be allowed all her "articles of apparel and ornament" and the "wearing apparel" of her husband. A decedent left at his death, among other things, a sword, a sword belt, and epaulets, a watch and watch key, a gold watch chain, seals, a finger ring, and a breast or bosom pin. The question related to the distribution of these articles as between the widow and next of kin. The court by a majority decided that the widow was entitled only to the epaulets and bosom pin, as constituting wearing apparel. The Chief Justice in dissenting said:

"I could not therefore entertain any doubt in regard to the military dress, epaulets, and sword of the deceased. It was strictly dress, and nothing else. The sword was as strictly dress as the epaulets, and that as much as the coat. It was none of it worn exclusively for covering or for comfort, but chiefly for ornament. So, too, of the pin and ring. They are as strictly dress as one's sleeve buttons, or, indeed, as the buttons upon the back of the coat, or as anything, indeed, which is not strictly indispensable. But the watch, perhaps, is more questionable. And still it seems to me that a watch which one wears, and a chain and seals are dress and apparel, and, as such, should go to the widow."

In One Pearl Chain v. United States, 123 Fed. 371, 59 C. C. A. 499, the Circuit Court of Appeals for the Second Circuit held that Mrs. Dulles, a passenger on an incoming vessel from foreign parts, in failing to mention a pearl necklace worn on her neck in her declaration of dutiable articles as a pearl necklace, or as jewelry, understanding that it was included in the declaration as "wearing apparel," did not violate section 3082, U. S. Rev. St. [U. S. Comp. St. 1901, p. 2014], or subject the necklace to forfeiture. The blank form annexed to the baggage declaration and entry contained under or opposite the heading "wearing apparel" an enumeration of articles, namely, "Dresses, Wraps, Bonnets, Gloves, Underwear, Jewelry, Coats, Trousers, Waistcoats." Judge Lacombe, in delivering the opinion of the court, said:

"She testified that she 'certainly understood' that the phrase 'wearing apparel' covered her jewelry, and for that reason did not then specifically mention

it. As ordinarily used, that phrase is hardly so comprehensive. Nevertheless, jewelry may fairly be called apparel, and it is worn on the person. If one chooses to classify jewelry as one variety of 'wearing apparel,' it cannot be held that he is making an improper and indefensible use of the English language. At any rate, the claimant's idea of classification appears to have been entirely in accord with that of the customs officers; for, in the schedule above set forth, jewelry appears as one of nine varieties of wearing apparel, being grouped between 'underwear' and 'coats.' "

In United States v. One Pearl Chain (D. C.) 139 Fed. 510, which was a proceeding for the forfeiture of the same chain referred to in the last-mentioned case, a verdict was directed for the claimant; Judge Holt saying:

"Now, the court in this case held that Mrs. Dulles, having stated that she had wearing apparel the value of which was not known, had made a sufficient declaration of the fact that she was bringing in jewelry. She appears to have brought in other property, the value of which she computed under this declaration after they arrived at the dock. It is not claimed that that property was forfeited because she had only described it as 'wearing apparel.' It is claimed that this is forfeited, but it is covered by the same general description. Counsel criticises the term 'wearing apparel,' and the court says, in this opinion, that it is not an expression which would be usually used to designate jewelry; but at the same time the court says that jewelry is included in the list, because described as wearing apparel; and it seems to me, when you consider it, it is nothing but wearing apparel. It is apparel, and it is worn, and the real function of it is to be worn as apparel. It seems to me that a necklace of this kind is wearing apparel, and nothing else."

The judgment in the above case was on appeal affirmed in United States v. One Pearl Chain, 139 Fed. 513, 71 C. C. A. 500. This is not the case of a bequest of "wearing apparel," or of an exemption of "necessary" wearing apparel, or of an exemption to a specified maximum amount or value. Materially different considerations are applicable to such cases. Here the exemption is of "all the wearing apparel" without qualification or limitation. Such being the statute, I am satisfied that the order of the referee must be modified in such manner as to allow to the bankrupts all of the articles claimed by them except the match safe belonging to the estate of John H. Evans.

Let a decree or order in accordance with this opinion be prepared and submitted.