**In re Marsha P. MIMS, SS #: 238–86–1692, Debtor.**

**Bankruptcy No. S–84–01759–5.**

United States Bankruptcy Court, E.D. North Carolina.

May 15, 1985.

Donald A. Davis, Raleigh, N.C., for debtor.

Gregory B. Crampton, Raleigh, N.C., trustee.

## MEMORANDUM OPINION AND ORDER ALLOWING EXEMPTION AND ALLOWING OBJECTION TO SALE

A. THOMAS SMALL, Bankruptcy Judge.

This matter comes on to be heard upon the January 18, 1985 Objection to Debtor's Schedule B–4 Claim of Exemptions filed by Gregory B. Crampton, trustee, and the debtor's January 28, 1985 objection to the trustee's proposed private sale of personal property. The dispute in this proceeding is whether the debtor may exempt a 1.28 carat solitaire diamond engagement ring or whether the ring should be sold by the trustee to the debtor's ex-husband for a purchase price of $3,500. A hearing was held in Raleigh, North Carolina on April 15, 1985.

### FACTS

The facts relating to this proceeding are not complicated. The debtor, Marsha P. Mims, filed a voluntary chapter 7 petition on November 21, 1984. As part of her exemptions, the debtor claimed a diamond engagement ring which her schedules list as having a value of $1,900. The debtor's ex-husband, who had given the ring to the debtor in 1973, offered to purchase the ring from the trustee for $3,500. The debtor contends that the 1.28 carat diamond ring is worth less than $3,500, but no evidence was introduced to support that contention,

and the court finds the value of the ring to be $3,500.

The debtor's claim that the $3,500 ring is exempt requires the combination of two North Carolina statutory exemptions. Ms. Mims claims, and the trustee concedes, that $2,500 of the ring's $3,500 value is exempt under N.C.GEN.STAT. § 1C–1601(a)(2), sometimes called the "wild card exemption," which permits a debtor to exempt the "debtor's aggregate interest in any property, not to exceed two thousand five hundred dollars ($2,500) in value less any amount of the exemption used under [N.C. GEN.STAT. § 1C–1601(a)(1)]." N.C.GEN. STAT. § 1C–1601(a)(1) allows a debtor to claim an exemption in up to $7,500 in value of a residence or a burial plot; the debtor made no claim under § 1C–1601(a)(1), and it is undisputed that she is entitled to claim up to $2,500 in *any* property pursuant to § 1C–1601(a)(2), including her diamond ring.

The debtor claims that the diamond ring's remaining $1,000 value is exempt under N.C.GEN.STAT. § 1C–1601(a)(4) as "wearing apparel." N.C.GEN.STAT. § 1C–1601(a)(4) provides an exemption for certain classifications of personal property, including "wearing apparel," having an aggregate value not to exceed $2,500 plus $500 for each of the debtor's dependents. The value of the property claimed by the debtor as exempt, exclusive of the diamond ring, under N.C.GEN.STAT. § 1C–1601(a)(4) is $1,040, and the trustee acknowledges that, if the engagement ring is considered to be wearing apparel, the remaining $1,000 value is exempt.

Based upon Ms. Mims' uncontradicted testimony, the court finds that the debtor has worn her diamond engagement ring as part of her daily attire since she received it from her ex-husband in 1973. The ring is not held by Ms. Mims as an investment, and the engagement ring is part of the debtor's daily wearing apparel.

## DISCUSSION AND CONCLUSIONS

The issue is whether the debtor may exempt her 1.28 carat diamond engagement ring under the North Carolina exemption for "wearing apparel." (N.C.GEN.STAT. § 1C–1601(a)(4)). The term "wearing apparel" is not defined in the North Carolina statute, there is no North Carolina case construing the term, and there is no legislative history describing what the North Carolina legislature intended.

One commentator who considered the issue concluded that:

> Exempting jewelry in North Carolina will prove to be difficult; it would require a strained reading of the phrases "household goods" or "wearing apparel" to fit jewelry into the language of section 1C–1601(a)(4). Peeples, *New Rules for an Old Game: North Carolina's New Exemption Act,* 17 Wake Forest L.Rev. 865, 881 (1981).

The trustee makes a credible argument, as does Professor Peeples in his thorough discussion of North Carolina exemption law, that the North Carolina legislature, by omitting any mention of jewelry in the exemption statutes, intended to deny an exemption for jewelry.

In 1981, the North Carolina General Assembly, as permitted by 11 U.S.C. § 522(b)(1), elected to "opt out" of the optional exemptions provided by the Bankruptcy Code in § 522(d). At the same time that the legislature denied the exemptions provided by § 522(d) to the residents of North Carolina, it substantially increased the exemptions provided under North Carolina law.

Many of the new North Carolina exemptions were borrowed from the § 522(d) bankruptcy exemptions. In fact, while the amounts are different, the categories of personal property which may be exempt under N.C.GEN.STAT. § 1C–1601(a)(4) are identical to the categories which are exemptable under § 522(d)(3).[1]

---

1. 11 U.S.C. § 522(d)(3) provides:
   The following property may be exempted under subsection (b)(1) of this section:

   The debtor's interest, not to exceed $200 in value in any particular item [or $4,000 in aggregate value] *, in household furnishings,

The North Carolina exemptions, however, do not include a separate exemption allowance for jewelry as does 11 U.S.C. § 522(d)(4).[2] According to the trustee and Professor Peeples, this omission is a strong indication that the legislature meant to make jewelry nonexempt.

> Since section 522(d), after which the language of section 1C–1601(a) was patterned, expressly sets jewelry apart in section 522(d)(4) as a category distinct from household goods and wearing apparel, the omission of any mention of jewelry must be taken as indicative of clear legislative intent. Perhaps the only certain way to protect a watch, ring, or an heirloom necklace would be to waive the $7,500 residence exemption and thus qualify for the $2,500 "wild card" exemption of section 1C–1601(a)(2). Peeples, *supra.*, at 881.

This is indeed a reasonable argument, but it is not entirely convincing.

If the trustee's position is correct, unless a debtor qualified for the $2,500 "wild card" exemption under § 1C–1601(a)(2) (by not claiming the residence exemption), the debtor would be denied an exemption for any jewelry whatsoever. Consequently, debtors who claim a homestead exemption in a residence would be required to discard every piece of jewelry which they own, their wedding rings, engagement rings, school rings, earrings, tie tacks, bracelets, necklaces, and pendants no matter how insignificant the monetary value or how significant the sentimental value. The court does not believe this is what the legislature intended.

When construing an ambiguous state statute, in the absence of legislative history and case law, the court must interpret the statute "in light of the overall policy of the legislation and the commonly accepted meaning of the words used in the statute." *Anderson v. Babb*, 632 F.2d 300, 308 (4th Cir.1980) (per curiam); *Watkins v. Cantrell*, 736 F.2d 933, 944 (4th Cir.1984); *Accord, State ex rel. Utilities Commission v. Public Staff*, 309 N.C. 195, 210, 306 S.E.2d 435 (1983). Furthermore, it is clear that exemption laws must be liberally construed in favor of the debtor in North Carolina. *Goodwin v. Claytor*, 137 N.C. 224, 49 S.E. 173 (1904); *Elmwood v. Elmwood*, 295 N.C. 168, 244 S.E.2d 668 (1978); *Hyman v. Stern*, 43 F.2d 666 (4th Cir. 1930); *In re Laughinghouse*, 44 B.R. 789 (Bankr.E.D.N.C.1984); *In re Love*, 42 B.R. 317 (Bankr.E.D.N.C.1984).

Under pre-1981 exemptions, a debtor did not have to choose between claiming a homestead exemption and claiming jewelry. Prior to 1981 North Carolina law exempted personal property valued at $500 from execution. (N.C. Const. art. X, § 1 (1868 and 1970)). The prior personal property exemption, enacted in 1868, was not limited to specific types of property and was completely separate from other exemptions. North Carolinians were not required to surrender their jewelry if they took advantage of the State's homestead exemption ($1,000 in real property—N.C. Const. art. X, § 2 (1868 and 1970)). The court is not per-

---

household goods, wearing apparel, appliances, books, animals, crops, or musical instruments, that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.
\* The language appearing in brackets was added by Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, § 306(b), 98 Stat. 333.

N.C.GEN.STAT. § 1C–1601(a)(4) provides:
Each individual, resident of this State, who is a debtor is entitled to retain free of the enforcement of the claims of his creditors:
The debtor's aggregate interest, not to exceed two thousand five hundred dollars ($2,500) in value for the debtor plus five hundred dollars ($500) for each dependent of the debtor, not to exceed two thousand dollars ($2,000) total for dependents, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments, that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.

2. 11 U.S.C. § 522(d)(4) provides:
The following property may be exempted under subsection (b)(1) of this section:
The debtor's aggregate interest, not to exceed $500 in value, in jewelry held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.

suaded that the legislature intended to change that result in 1981.

■ To require a debtor who claimed his residence as exempt to relinquish a wedding ring or engagement ring would not only be contrary to prior North Carolina practice, it would also be contrary to one of the traditional purposes of exemption law—the preservation of the debtor's dignity. Resnick, *"Prudent Planning or Fraudulent Transfer? The Use of Non-exempt Assets to Purchase or Improve Exempt Property on the Eve of Bankruptcy,"* 31 Rutgers L.Rev. 615, 623 (1978).

Although there are no North Carolina cases on this point, many other courts have considered whether an exemption for wearing apparel may include jewelry. Some courts have concluded that an exemption of wearing apparel includes clothing but not jewelry used only as an ornament. *Towns v. Pratt,* 33 N.H. 345, 349, 66 Am.Dec. 726 (1856); *Rothschild v. Boelter,* 18 Minn. 361 (1872); *Frazier v. Barnum and McWilliams,* 19 N.J.Eq. 316, 97 Am.Dec. 666 (1868).

Other courts, however, have held that an exemption of wearing apparel includes an exemption of jewelry. *In re Richards,* 64 F.Supp. 923 (S.D.TX 1946) (diamond ring); *In re H.L. Evans & Co.,* 158 F. 153 (D.DE1907) (a diamond ring, a sapphire ring, and two gold rings, scarf pins, cuff links, watch fobs, and shirt studs); *Phillips v. Phillips,* 151 Ala. 527, 44 So. 391 (1907) (ring); *First National Bank v. Robinson,* 124 S.W. 177 (Tex.Civ.App.1910) (diamond ring); *Hickman v. Hickman,* 149 Tex. 439, 234 S.W.2d 410 (1950) (two diamond rings); *Milwaukee Accredited Schools of Beauty Culture, Inc. v. Patti,* 237 Wis. 277, 296 N.W. 616 (1941) (wedding ring and engagement ring); *In re Deacon,* 27 F.Supp. 296 (S.D.IL 1939) (consistory ring).[3]

In concluding that "all wearing apparel" included a ring, the Alabama Supreme Court, using language common to many similar decisions, stated that,

The definition of the word "apparel," as given by lexicographers, is not confined to clothing. The idea of ornamentation seems to be a rather prominent element in the word.... The phrase "wearing apparel," as used in exemption laws, has its proper sense, and includes all the articles of dress generally worn by persons in the calling and condition of life and in the locality of the residence of the person claiming the exemption. It includes whatever is necessary to a decent appearance and protection against exposure to the changes of weather, and also what is reasonably proper and customary in the way of ornament. *Phillips v. Phillips,* 44 So. at 392; *see e.g., In re H.L. Evans & Co.,* 158 F. at 159; *Ohio Valley Bank v. Minter,* 108 W.Va. 58, 150 S.E. 366, 368 (1929); *Sellers v. Bell,* 94 F. 801, 810–12 (5th Cir.1899).

■ In the absence of a clear indication from the State legislature that "wearing apparel" may never include jewelry, and after considering the established policy favoring liberal construction of exemption laws in a debtor's favor, the decisions of courts from other jurisdictions on this issue, the traditional purposes of exemption laws which include the preservation of a

---

**3.** Many courts have held that a watch is an item of wearing apparel. *In re Carter's Estate,* 113 Okl. 182, 240 P. 727 (1925) ("all wearing apparel" includes watch); *Phillips v. Phillips,* 151 Ala. 527, 44 So. 391 (1907) (assuming decedent wore watch during lifetime, "all wearing apparel" includes watch); *In re Jones,* 97 F. 773, 774 (E.D.WI1899) ("watch usually carried on the person of the debtor constitutes wearing apparel"); *Sellers v. Bell,* 94 F. 801, 810–12 (5th Cir. 1899) (necessary and proper wearing apparel includes watch worn by debtor); *Milwaukee Accredited Schools of Beauty Culture, Inc. v. Patti,* 237 Wis. 277, 296 N.W. 616 (1941) ("all wearing apparel" includes watch); *McClung v. Stewart,* 12 Or. 431, 8 P. 447 (1885) ("necessary wearing apparel" includes watch); *In re H.L. Evans & Co.,* 158 F. 153 (D.DE1907) (all wearing apparel includes watch); *In re Caswell,* 6 Am.Bankr.Rep. 718 (D.R.I.1901) (watch exempt as wearing apparel); *Brown v. Edmonds,* 8 S.D. 271, 66 N.W. 310 (1896) ("all wearing apparel and clothing of the debtor and his family" includes a watch). But, see also, *In re Turnbull,* 106 F. 667 (D.MA1901) (watch is not "necessary wearing apparel"); *Gooch v. Gooch,* 33 Me. 535 (1852) (construction of will excluded watch from term "wearing apparel").

debtor's dignity, and the long standing policy under the State's pre-1981 exemption laws which allowed debtors to exempt any personal property (including jewelry) whether a homestead was exempted, the court concludes that the "wearing apparel" exemption provided in N.C.GEN.STAT. § 1C–1601(a)(4) *may* include a diamond engagement ring.

■ This is not to say that an item of jewelry will always qualify as "wearing apparel" in every case. "A diamond ring, which is a substantial investment asset, should not be exempted from [a debtor's] liability to shoulder [her] own debts." *In re Westhem,* 642 F.2d 1139, 1141 (9th Cir. 1981) (Gibson, J., dissenting); *accord, In re Deacon,* 27 F.Supp. at 296. If jewelry is acquired and kept as an investment rather than as an item of ornamental apparel, then it is not wearing apparel. *In re Leech,* 171 F. 622, 626 (6th Cir.1909); *In re H.L. Evans & Co.,* 158 F. at 155.

In the present case, Ms. Mims has worn her diamond engagement ring as a part of her normal apparel since she received it in 1973. She does not hold the ring for the purpose of investment, but solely as a part of her daily wearing apparel.

■ The court concludes that the debtor may exempt $1,000 in value of her diamond engagement ring as "wearing apparel" under N.C.GEN.STAT. § 1C–1601(a)(4) and that she may combine the $1,000 exemption with the $2,500 exemption provided by N.C. GEN.STAT. § 1C–1601(a)(2) to exempt the entire $3,500 value of her ring. Accordingly,

**IT IS HEREBY ORDERED** that the trustee's January 18, 1985 Objection to Debtor's Schedule B–4 Claim of Exemptions is DENIED; and

**IT IS FURTHER ORDERED** that the debtor's January 28, 1985 objection to the trustee's proposed private sale of the debtor's diamond engagement ring is ALLOWED.