**In re Cindy L. RAGAN, SS#: 557–41–9416, Debtor.**

**Bankruptcy No. S–86–01052–5.**

United States Bankruptcy Court, E.D. North Carolina.

Aug. 29, 1986.

Jeffrey M. Seigle, Raleigh, N.C., for debtor.

Gregory B. Crampton, Raleigh, N.C., Trustee.

**MEMORANDUM OPINION AND ORDER DENYING EXEMPTIONS**

A. THOMAS SMALL, Bankruptcy Judge.

The matter before the court is the trustee's objection to the chapter 7 debtor's

claim of exempt property. A hearing was held in Raleigh, North Carolina, on August 4, 1986.

## FACTS

The few facts which are before the court are not disputed. The debtor, Cindy L. Ragan, filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on May 1, 1986. Gregory B. Crampton was appointed trustee.

The debtor's husband was murdered on March 30, 1986, but there is no evidence before the court concerning the circumstances of his death or concerning any claim that the debtor might have for wrongful death. The debtor's statement of affairs indicates that the debtor's husband paid $350 as child support within the past two years, but there is no direct evidence that Mrs. Ragan was dependent upon her husband for support.

The life of the debtor's husband was insured by two insurance policies. The first insurance policy was a credit life insurance policy which paid the balance owing on the debtor's 1985 Nissan Pulsar NX. The parties agree that the automobile is not exempt except that the debtor is entitled to an exemption in the automobile of $1,000 pursuant to N.C.GEN.STAT. § 1C–1601(a)(3). The debtor will file an amendment to her schedules to claim that exemption.

The terms of the second policy are not in evidence before the court other than that the proceeds of the policy are $100,000 which have been or will be paid to the debtor.

The debtor initially claimed the proceeds of the $100,000 policy as exempt under N.C.GEN.STAT. § 1C–1601(a)(6) and Article X, Section 5 of the North Carolina Constitution. Subsequently, after the trustee objected to the debtor's exemption, the debtor amended the Schedule B–4 claim of exemptions to claim the $100,000 proceeds as exempt under N.C.GEN.STAT. § 1C–1601(a)(8).[1] On August 7, 1986, the trustee filed an Objection to Amended Claim of Exempt Property, which asserted that the proceeds were not covered by an allowable exemption pursuant to N.C.GEN.STAT. § 1C–1601(a)(8).

## DISCUSSION AND CONCLUSIONS

N.C.GEN.STAT. § 1C–1601(a)(6) provides an exemption for:

[L]ife insurance as provided in Article X, Section 5 of the Constitution of North Carolina.

Article X, Section 5 of the Constitution of North Carolina provides:

[a] person may insure his or her own life for the sole use and benefit of his or her spouse or children or both, and upon his or her death the proceeds from the insurance shall be paid to or for the benefit of the spouse or children or both, or to a guardian, free from all claims of the representatives or creditors of the insured or his or her estate. Any insurance policy which insures the life of a person for the sole use and benefit of that person's spouse or children or both shall not be subject to the claims of creditors of the insured during his or her lifetime, whether or not the policy reserves to the insured during his or her lifetime any or all rights provided for by the policy and whether or not the policy proceeds are payable to the estate of the insured in the event the beneficiary or beneficiaries predecease the insured. (1977, c. 115, s. 1.)

Presumably, by amending Schedule B–4, the debtor has abandoned the position that the insurance proceeds are exempt under N.C.GEN.STAT. § 1C–1601(a)(6) and the Constitution of North Carolina Article X,

---

**1.** The amendment which was signed by only debtor's counsel was not properly executed. Bankruptcy Rule 1009 provides that a voluntary petition, list, schedule, statement of financial affairs, statement of executory contracts, or Chapter 13 Statement may be amended at any time before the case is closed. Bankruptcy Rule 1008 says that those items *and amendments* thereto must be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746. The debtor will have the opportunity to correct the deficiency in her amendment.

Section 5. There is no evidence before the court as to the terms of the insurance policy, but even if the policy meets the requirements of Article X, Section 5, the proceeds of the policy are not exempt from the claims of the beneficiary's creditors. *Matter of Sharik*, 41 B.R. 388 (Bankr.E.D. N.C.1984).

The more difficult question is whether the proceeds of the life insurance policy are exempt under N.C.GEN.STAT. § 1C–1601(a)(8) which provides an exemption for:

[c]ompensation for personal injury or compensation for the death of a person upon whom the debtor was dependent for support, but such compensation is not exempt from claims for funeral, legal, medical, dental, hospital, and health care charges related to the accident or injury giving rise to the compensation.

■■■ The debtor argues that the $100,-000 proceeds from the policy insuring her husband's life represents "compensation ... for the death of a person upon whom the debtor was dependent for support...."[2] The trustee contends that the statutory language quoted above creates an exemption for compensatory damages received pursuant to a wrongful death action,[3] but not for benefits paid under the terms of a life insurance policy. The resolution of such disputes concerning the scope of N.C.GEN.STAT. § 1C–1601(a)(8) "will turn on the court['s] construction of the term 'compensation.'" Peeples, *New Rules for an Old Game: North Carolina's New Exemption Act*, 17 Wake Forest L.Rev. 865, 883 (1981). Exemption laws are to be construed liberally in favor of the debtor in North Carolina. *In re Mims*, 49

B.R. 283, 286 (Bankr.E.D.N.C.1985). At the same time, this court must attempt to give effect to the legislative intent by construing this ambiguous state statute "in light of the overall policy of the legislation and the commonly accepted meaning of the words used in the statute." *Anderson v. Babb*, 632 F.2d 300, 308 (4th Cir.1980).

■■■ If the language of a statute is clear in its context, it is controlling and no judicial construction is needed. *American Motors Sales Corp. v. Peters*, 311 N.C. 311, 317 S.E.2d 351 (1984). "Compensation" is not defined in N.C.GEN.STAT. § 1C–1601 and there is no North Carolina case construing the term in this context. *Black's Law Dictionary* 256 (5th ed. 1979), contains the following definition of "compensation":

Indemnification; payment of damages; making amends; making whole; giving an equivalent or substitute of equal value. That which is necessary to restore an injured party to his former position....

... An act which a court orders to be done, or money which a court or other tribunal orders to be paid, by a person whose acts or omissions have caused loss or injury to another, in order that thereby the person damnified may receive equal value for his loss, or be made whole in respect of his injury.

The legislative history to 11 U.S.C. § 522, the section of the United States Bankruptcy Code dealing with exemptions, refers to "compensation" as including life insurance proceeds: "Paragraph (11) allows the debtor to exempt certain *compensation* for losses. These include crime vic-

---

**2.** At the August 4 hearing, the debtor failed to prove that she was dependent on her deceased husband for support, as is required in order to receive an exemption under N.C.GEN.STAT. § 1C–1601(a)(8). That the debtor's husband paid $350 as child support within the past two years does not, by itself, establish dependency. (Although 11 U.S.C. § 522(a)(1), the section of the United States Bankruptcy Code concerning exemptions, defines "dependent", for purposes of that section, as including a spouse whether or not the spouse is actually dependent, that definition cannot be read into an exemption created by state law such as N.C.GEN.STAT. § 1C–

1601(a)(8).) In view of the decision rendered today, it is unnecessary to decide whether it would be appropriate to give the debtor an additional opportunity to prove dependency.

**3.** N.C.GEN.STAT. § 28A–18–2 gives a decedent's personal representative the right to recover damages for his wrongful death. That same statute also exempts the damages recovered from the reach of the deceased's creditors (except debts for specified burial and medical expenses), but not from the reach of creditors of the beneficiaries.

tim's reparation benefits, wrongful death benefits ..., [and] *life insurance proceeds* ...." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 361–62 (1977) (emphasis added), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6316, 6317. While it is clear then that the term "compensation" can be used to describe life insurance proceeds, it would appear from the dictionary definition that the term can also be used to more specifically refer to damages received pursuant to a court action. The court finds that the various definitions of "compensation" noted in the briefs of both parties do not resolve the ambiguities contained in N.C. GEN.STAT. § 1C–1601(a)(8).

■ In construing a statute, it is helpful for a court to consider the circumstances surrounding the statute's adoption. *State ex rel. Hunt v. North Carolina Reinsurance Facility,* 302 N.C. 274, 275 S.E.2d 399 (1981). Unfortunately, there is no legislative history describing what the North Carolina legislature intended. At the August 4 hearing on this matter, counsel for the debtor tendered to the court a copy of a memorandum dated May 4, 1981, to members of the North Carolina House of Representatives from Representative W. Paul Pulley, Jr. which listed the exemptions available at that time under the North Carolina Constitution and Section 522(d) of the Bankruptcy Code. The memorandum also listed the exemptions provided in pending House Bill 313 entitled: "An Act to Improve the Laws Relating to the Collections of Money Judgments and the Exemptions, Part 3, Exemptions." The memorandum's summary of the bill contained the language of N.C.GEN.STAT. § 1C–1601(a)(8) which is now the focus of controversy in this dispute. The memorandum, which is not part of the official record of legislative proceedings, merely summarizes the law as it existed at that time and the proposals contained in the pending bill. Because it contains no elaboration, analysis, or explanation, it does not shed any light on the legislature's intent with respect to § 1C–1601(a)(8).

Prior to the Bankruptcy Code, federal bankruptcy law granted debtors the exemptions provided by state law and federal nonbankruptcy law. Bankruptcy Act of 1898, § 6. The Bankruptcy Code, effective on October 1, 1979, established new federal exemptions for debtors. 11 U.S.C. § 522(d). The Bankruptcy Code permits a debtor to choose between the federal bankruptcy exemptions set forth in § 522(d) and the exemptions provided by applicable state and federal nonbankruptcy law unless applicable state law expressly denies debtors that choice. 11 U.S.C. § 522(b). If a state "opts out" of the § 522(d) exemptions, the debtors in that state are limited to the exemptions provided by state law and federal nonbankruptcy law.

In 1981, the North Carolina General Assembly responded to this change in the federal law of bankruptcy exemptions by enacting N.C.GEN.STAT. §§ 1C–1601–1604, the North Carolina Exemptions Act. Under this act, North Carolina opted out of the optional exemptions provided in § 522(d) of the Bankruptcy Code. N.C. GEN.STAT. § 1C–1601(f). At the same time, the North Carolina Exemptions Act created new state law exemptions which were patterned after those set forth in § 522(d). Peeples, *supra,* at 874. The North Carolina and federal laws differed significantly, however. "With one or two exceptions, the exemptions permitted under section 1C–1601 [were] less generous than those provided by section 522(d)." *Id.*

Section 522(d)(11)(C) of the Bankruptcy Code creates an exemption for life insurance proceeds. It exempts:

a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent on the date of such individual's death, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor; ....

Thus, the Code sets forth a limited, but explicit exemption of life insurance benefits paid to a debtor-beneficiary.

Since 1868, the North Carolina Constitution has prohibited creditors of an insured

from reaching proceeds of a life insurance policy taken out for the benefit of the insured's spouse or children. N.C. CONST. art. X, § 5. However, North Carolina law has not prevented such proceeds from being reached by creditors of the *beneficiary*, at least not prior to the 1981 enactment of the North Carolina Exemptions Act.[4] This court believes that, had the North Carolina legislature intended to change North Carolina law by exempting life insurance policy proceeds from the claims of the beneficiary's creditors, it would have done so in language more explicit than that contained in N.C.GEN.STAT. § 1C–1601(a)(8). Support for this conclusion is found in the failure of the legislature to adopt any of the language of 11 U.S.C. § 522(d)(11)(C) which clearly exempts life insurance proceeds from the reach of the beneficiary's creditors, especially in view of the fact that many other § 1601(a) subsections are worded virtually identically to § 522(d) subsections.[5]

■ The meaning of a doubtful word may frequently be ascertained by looking at adjoining words in the same document. *Morecock v. Hood*, 202 N.C. 321, 162 S.E. 730 (1932). N.C.GEN.STAT. § 1C–1601(a)(8) provides an exception to the "compensation" exemption for "funeral, legal, medical, dental, hospital, and health care charges related to the *accident or injury* giving rise to the compensation" (emphasis added). Wrongful death recoveries are traditionally obtained following accidents or injuries caused negligently or intentionally by another; payments from a life insurance policy, on the other hand, will result from illness as often as from accident or injury. Had the North Carolina legislature intended N.C.GEN.STAT. § 1C–

1601(a)(8) to exempt insurance proceeds as well as wrongful death recoveries, it likely would have referred to medical charges related to the *illness*, as well as to the accident or injury giving rise to the compensation.

The purpose of the North Carolina Exemptions Act is to insure that a debtor retain sufficient possessions for a fresh start. *Matter of Ellis*, 33 B.R. 16 (Bankr. E.D.N.C.1983). But there is a counterveiling consideration which undoubtedly influenced the North Carolina legislature to make its exemptions less generous than those provided in 11 U.S.C. § 522(d): "[E]xemptions should not exceed what is necessary for the support of debtors and their dependents and for debtors' rehabilitation. To grant greater exemptions would provide a windfall to debtors while denying creditors payments to which they are entitled." Vukowich, *Debtor's Exemption Rights Under the Bankruptcy Reform Act*, 58 N.C.L.Rev. 769, 771 (1980). The interpretation of N.C.GEN.STAT. § 1C–1601(a)(8) urged by the debtor would in many instances create just such a windfall for debtor-beneficiaries in exempt life insurance payments.[6] Life insurance benefits will often exceed what is necessary to support the debtor and to replace the lost income of a deceased family member.

In *In re Huffines*, 57 B.R. 740, 742 (M.D. Tenn.1985), the court held that the Tennessee legislature did not intend to create an exemption for life insurance proceeds when it passed a statute exempting "[a] payment in compensation of loss of future earnings of ... an individual of whom the Debtor ... was a dependent...." The following language from that decision is applicable to this case:

---

4. Some states have enacted statutes which exempt the proceeds of life insurance policies from the claims of creditors of the beneficiary. *See,* Vukowich, *Debtor's Exemption Rights,* 62 Geo.L.J. 779, 809 (1974).

5. *Compare* N.C.GEN.STAT. § 1C–1601(a)(1) *with* 11 U.S.C. § 522(d)(1); N.C.GEN.STAT. § 1C–1601(a)(3) *with* 11 U.S.C. § 522(d)(2); N.C.GEN.STAT. § 1C–1601(a)(4) *with* 11 U.S.C. § 522(d)(3); N.C.GEN.STAT. § 1C–1601(a)(5)

*with* 11 U.S.C. § 522(d)(6); N.C.GEN.STAT. § 1C–1601(a)(7) *with* 11 U.S.C. § 522(d)(9).

6. Section 522(d)(11)(C) of the Bankruptcy Code addresses this concern by limiting the exemption for life insurance payments to an amount "reasonably necessary for the support of the debtor and any dependent of the debtor." N.C. GEN.STAT. § 1C–1601(a)(8) does not contain such a limitation.

It is intuitively appealing to attempt to construe payment under a life insurance contract as a payment in compensation of loss of future earnings. We naturally assume that one of the primary reasons for purchase of life insurance is the protection of our loved ones when we are no longer able to provide the income necessary for their support. Further, on the surface, it seems to be the best possible policy to insure the existence of a fund to support families which have lost a breadwinner, in order to keep them from insolvency in the first place, and to protect them from becoming wards of the state in that event....

However, there are specific reasons for rejecting this construction which overwhelm both good policy and intuitively plausible construction. First, the specific language chosen indicates that the section is intended to exempt only payments which compensate one for loss of future earnings. It is true that from the perspective of the beneficiary, and perhaps even the perspective of the purchaser, life insurance is designed to replace future income. However, life insurance is designed to do many other things besides protect against loss of future income. These include debt reduction, payment for specific expenses such as college educations, payment to fund estates, payment to enable one partner to buy out the interest of another, and many others....

A stronger reason to find an intentional exclusion of life insurance is that 11 U.S.C. § 522(d)(11)(C) expressly provides for an exemption for life insurance proceeds on specific conditions. The Tennessee General Assembly was aware of that section when it drafted Tenn.Code Ann. § 26–2–111, and therefore can be presumed to have specifically rejected this concept. For that reason, the Debtor's claims of an exemption under Tenn. Code Ann. § 26–2–111 must be rejected.

*Id.*, at 742–743 (quoting from the previously unpublished decision of the bankruptcy court which was adopted verbatim and printed in its entirety in the district court opinion).

This court holds that the "compensation" exemption provided in N.C.GEN. STAT. § 1C–1601(a)(8) does not include life insurance proceeds, and consequently the trustee's objection should be allowed.

The court recognizes that it may seem illogical to allow an exemption for damages received when a debtor's spouse dies in a manner which gives rise to a successful wrongful death action, but to deny any exemption for life insurance payments for a death that occurs under circumstances which do not give rise to an action for wrongful death, such as when the debtor's spouse is felled by a heart attack or struck by lightning.[7] A debtor-dependent's need for an exemption may be as great when her source of support is cut off through an act of God as when it is cut off through the wrongful act of another. However, in view of the perceived legislative intent behind the enactment of N.C.GEN.STAT. § 1C–1601(a)(8), such concerns are properly addressed to the legislature. Accordingly,

IT IS HEREBY ORDERED that the trustee's July 8, 1986 Objection to Claim of Exempt Property is ALLOWED except that the debtor is entitled, upon filing an amendment to her schedules, to an exemption of $1,000 in her 1985 Nissan Pulsar NX; and

IT IS FURTHER ORDERED that the trustee's August 7, 1986 Objection to Amended Claim of Exempt Property is ALLOWED.

---

**7.** This may seem particularly illogical where, as in the present case, the insured's death was wrongfully caused.